## Navarro Corporation *v.* Pittsburgh School District, Appellant.

Argued March 25, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*N. R. Criss,* for appellant.

*Maurice Chaitkin,* for appellee.

OPINION BY MR. JUSTICE DREW, April 13, 1942:

Pursuant to the arbitration clause of a building contract, made and entered into by plaintiff, Navarro Corporation, a general contractor, and defendant, School District of Pittsburgh, the owner of the building to be constructed, a Board of Arbitrators was appointed under the Act of April 25, 1927, P. L. 381, to determine the validity of a claim for damages filed by the contractor against the owner. The arbitrators found in favor of the contractor, who petitioned the court to enter judgment on the award; while the owner petitioned the court to enter judgment in its favor in the nature of a judgment n. o. v. The court below entered judgment in favor of the contractor, and the owner appealed.

In this opinion we shall refer to the Navarro Corporation as plaintiff, the School District as defendant, and the Board of Public Education of the School District of Pittsburgh as the Board.

The only question before us is whether or not the lower court erred in confirming the award of the arbitrators in this case. In order to arrive at the right conclusion, it is necessary to examine the facts connected with and that gave rise to the arbitration proceeding.

On January 19, 1937, the Board opened bids for the construction of a new school building, known as the

Lemington School. In keeping with the provisions of the Act of May 1, 1913, P. L. 155, separate bids were taken for the electrical work, the plumbing work, the heating and ventilating, and the general work. The lowest responsible bidder for the general work was plaintiff, and the lowest responsible bidder for the electrical work was the West End Machine and Engineering Company, which operated a non-union shop. The Electricians Union and the Electrical Contractors Association opposed the awarding of a contract to this company, and the contract was not awarded at that meeting.

The school building was a Public Works Administration project, the Federal Government agreeing to contribute 45% of the cost, and all contracts had to be approved by that governmental agency. Representatives of the Board went to Washington and conferred with the federal officials and were advised that the same situation had arisen prior to that time in connection with like contracts in other sections of Pennsylvania, and their ruling was that the electrical contract must be given to the lowest responsible bidder without reference to whether he was a union or non-union contractor. On January 28, 1937, the Board met, and having obtained assurances from the West End Machine and Engineering Company that it would employ union men on the work, and because of the ruling of the P. W. A. authorities, and also because of the provision of the Act of 1913, supra, which requires that such contracts be awarded to the lowest responsible bidder, the general contract was awarded to plaintiff, and the electrical contract was awarded to the West End Machine and Engineering Company.

On March 26, 1937, the Electricians Union called a strike which continued until April 20, 1937, on seven school buildings under construction, including the Lemington School, because the West End Machine and Engineering Company was doing some electrical work in existing buildings. On May 5, 1937, all of plaintiff's em-

ployees left the work because the West End Machine and Engineering Company sent a non-union electrician on the job, and thus completely stopped plaintiff's work until June 10, 1937, when the strike ended. The Board was advised by the State Employment Office, which under the rules of the P. W. A., embodied in its contract with defendant, assigned all men to the work, that no more men would be sent by it to the electrical contractor at the Lemington School. Thereupon the Board declared a forfeiture of the contract with the West End Machine and Engineering Company and finished the work with its own union men. That company then entered a suit against defendant for a breach of its contract and recovered a verdict of $4,000.

During the period of this last strike, May 5 to June 10, plaintiff claims it suffered damages, and this is not denied. The arbitrators so found and made an award of $7,299.66, upon which judgment was entered.

It is the contention of defendant that the arbitrators and the court below made a mistake of law in determining that defendant was liable for the loss occasioned to plaintiff by the strike of the latter's employees. That this Court may review the award on appeal cannot be seriously questioned. The Act of 1927, supra, under which this proceeding was instituted, places an award on the same footing as the verdict of a jury, and, therefore, mistakes of law may be rectified on appeal: *Phila. Hous. Auth. v. Turner Const. Co.*, 343 Pa. 512.

A solution of this controversy depends upon a proper interpretation of the provisions of the contract existing between the parties, the pertinent portion of which reads as follows: "VIII. The Owner [defendant] agrees to provide all labor and materials essential to the conduct of this work not included in this contract, in such manner as not to delay its progress, and in the event of failure so to do, thereby causing loss to the Contractor [plaintiff], agrees that it will reimburse the Contractor for such loss . . ." The sole question is, therefore, did

defendant, under this provision of the contract, assume responsibility for damages suffered by plaintiff by reason of the strike among the latter's own men arising because defendant, in good faith and as required by law and the ruling of the P. W. A. officials, awarded the electrical contract to the West End Machine and Engineering Company, who employed non-union men? A careful reading of the above-quoted portion of the contract firmly convinces us that the arbitrators and the court below fell into error in so determining. There was no strike by the workmen furnished by the West End Machine and Engineering Company, but rather by the employees of plaintiff. The work of plaintiff was never delayed by a failure of defendant or any of its contractors, particularly the West End Machine and Engineering Company, to furnish such labor and materials as were necessary to have the work of plaintiff proceed. It is difficult to understand how defendant could be held liable in damages, under the contract, for delay in the work caused by plaintiff's own striking employees. Certainly, it could only be if defendant forced those employees off the job. And even if this were true, as plaintiff argues, because of letting a contract to a non-union employer, the answer is immediate that defendant had no choice in that matter and only did what it was required to do by law and its contract with the federal authorities, to-wit: let the contract to the lowest responsible bidder. The law does not presume that the parties intended one of them to do an illegal act: *Zenatello v. Hammerstein*, 231 Pa. 56. It cannot seriously be contended that the electrical contractor was not the lowest responsible bidder merely because he employed non-union labor. This fact does not detract from his responsibility: *State ex rel. v. Bldg. Comm.*, 124 Ohio St. 413, 179 N. E. 138, 125 Ohio St. 301, 181 N. E. 129; *New York and Cleveland Gas Coal Co. v. Pittsburgh*, 6 D. R. 757. If the interpretation placed on Article VIII by the arbitrators and the court below is correct, then defendant guaranteed each contractor

against any and all stoppage of the work for any reason whatever. Since the contracts had to be given to the lowest responsible bidder, if such interpretation is true, defendant placed itself and the public interest absolutely at the mercy of any man or men working on the building for any one of the many contractors. And delay in the progress of the work caused by any one of them would make defendant liable in damages to each and every one of the contractors. It is not too much to say that Article VIII will bear no such unreasonable interpretation. Where language is susceptible of two constructions, the more reasonable is to be preferred: *Hempfield T. S. Dist. v. Cavalier*, 309 Pa. 460, 464. Such a situation was never contemplated by the parties who placed this provision in the contract. It is clear that had it been intended that defendant assume such an unusual and burdensome responsibility, the contract would have expressly so provided.

Therefore, the judgment of the court below confirming the award must be reversed.

Judgment reversed and here entered for defendant.