Sgarlat, Appellant, *v.* Griffith.

Argued January 12,1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Frank L. Pinola,* with him *Nathan Hyman,* for appellant.

*William A. Valentine,* for appellee.

OPINION BY MR. JUSTICE DREW, March 20, 1944:

This suit was brought by plaintiff upon a written contract, to recover extra compensation provided therein for the removal of rock in course of excavation. The case was heard by the court without a jury; and a judgment rendered for defendant was affirmed by the Superior Court. This appeal was by special allowance.

Joseph Pessari engaged appellee (defendant) as general contractor to construct a building. Appellee then made a contract with appellant (plaintiff) to do the excavation and concrete work in accordance with the plans of the architect. The contract provided for the payment of a lump sum of $3,050.00 for all of the construction work, and when the work was finally completed in March 1936 this amount was paid in full.

This contract provided further that "In excavating if rock be found which would require removal by blasting $1.10 per cu. yd. will be paid for by measurements of the architect and certificate furnished by him." This suit was brought to recover compensation alleged to have been earned under this part of the contract. Rock was found in the excavation, and in large quantity, which required removal by blasting or some equally powerful medium. The property to be excavated was at the corner of Grove and Prospect Streets, in a built up section of the City of Wilkes-Barre. Because of the proximity of buildings and two streets appellant feared possible damage to property and injury to persons if he used dynamite to blast the rock. The uncontradicted testimony shows there was a building ten to twelve feet from the excavation, and another three to five feet away, and that the excavation was twenty-four feet deep, well below the foundations of these buildings. Appellant

feared if he blasted in sufficient force to remove the rock he would damage or knock down the buildings. He had purchased the dynamite and brought it on the job when he concluded that it would be best to remove the rock by a jack hammer operated by compressed air. This he did although the expense to himself was much greater than it would have been if the rock were removed by blasting. One of the workmen testified it took four or five weeks to remove the rock by the method used, whereas the same manpower would have taken it out by blasting in two weeks.

Appellant estimated that he had removed 1,120 cubic yards of rock and demanded his compensation as fixed in the written contract. Appellee refused to pay until Pessari paid him, and the latter denied liability on the ground that the rock had not been removed by blasting. Appellant sought a certificate from the architect, who urged him to straighten the matter out with the owner and appellee. When this could not be done appellant engaged counsel, who requested the certificate, and almost four years after the work was done, the architect wrote in a letter to appellant's counsel as follows: "Regarding the Pessari job and the amount of rock excavation for the same . . ., I find that the total yardage of rock as excavated amounted to 820 cubic yards . . . Regardless of in what manner this material was removed, whether by jack hammer or dynamite, nevertheless it was rock. Consequently, I hereby certify to the removal of the above material, to-wit: 820 cubic yards of rock excavation and leave it to others to adjudicate the terms of the contract for payment or non-payment of the same." This certificate was attached to the statement of claim.

While appellant claimed 1,120 yards of excavation, the architect certified to the removal of 820 cubic yards of rock. The court found as a fact that 820 cubic yards of rock had been removed by appellant, and this it could only have done on the basis of the architect's certificate.

While it is true that the rock was not removed by blasting, still the architect certified and the court found that 820 cubic yards of rock were removed, and the uncontradicted evidence is that the rock was of such character that it would ordinarily require removal by blasting, which was not resorted to because of the danger to life and property. The lower court held that appellant could not recover because the rock had not been blasted. The Superior Court took the same position.

Appellee sought to make the owner an additional defendant but failed, and he thereupon brought an action against him which is still pending. The result of appellant's claim to date is, the owner has his building, his contract for its construction has been fully carried out, all the rock in the excavation was removed by appellant, as certified by the architect, and the consideration for his labor and materials fixed in the written contract, now $902.00 and interest for about eight years, is denied him. No wonder the learned judge of the lower court in his opinion admitted that "greater equity might perhaps be done", if payment were allowed.

Appellant contends that the literal construction of the contract adopted by the lower court, and the Superior Court, is unfair, unreasonable and oppressive. He contends that the clear intention of the parties was "to pay extra if rock be found regardless of the method of removal." The lower court held tenaciously to the dictionary definition of the words "require" and "blasting" and held that those words were used in their ordinary and popular sense, and as so used in the contract made it appear that the parties thereto intended that any rock found in the excavation should be removed by the use of dynamite and blasting, and that the rock could not be removed in any other way. The Superior Court felt the same way about it.

We must say we think this is a forced and strained construction of the contract. We are certain, at the time the contract was made, the architect, the general con-

tractor, and the subcontractor, this appellant, did not give any consideration to the method of removal of the rock and made it clear that appellee should only pay extra for the removal of that kind of rock which usually requires blasting. There is no doubt that the quick and cheap way to remove such rock is by blasting; and it must be admitted that this rock would have been removed in that way except for the danger incident to blasting in that place. Since appellee got full and complete performance of his contract, as is demonstrated by the certificate of the architect, he has no reasonable ground of complaint and he should have long since paid to appellant the contract price for his work. Any other view would result in the forfeiture of appellant's labor and materials for what at most can only be regarded as a trivial or inappreciable variation in the contract. The law is not so harsh as to put such a penalty upon an innocent person for a minor defect which did not damage the other party or cause him to lose a single cent.

If this judgment stands, what becomes of the doctrine of substantial performance, which Judge CARDOZO (*Jacob & Youngs v. Kent,* 230 N. Y. 239, 129 N. E. 889) said "has been developed by the courts as an instrument of justice"? This court has always turned its face against forfeitures. We said in *Morgan v. Gamble,* 230 Pa. 165, 79 A. 410: "The equitable doctrine of substantial performance is intended for the protection and relief of those who have faithfully and honestly endeavored to perform their contracts in all material and substantial particulars, so that their right to compensation may not be forfeited by reason of mere technical, inadvertent, or unimportant omissions or defects."

The Restatement of Contracts, Section 274, p. 399, with reference to failure of consideration as a discharge of duty, in Subsection 1, makes it clear that only material failure of performance by one party discharges the other party. "An immaterial failure does not operate as such a discharge". And Section 275, pp. 402-3, gives

the rules for determining materiality of a failure to perform. It reads as follows: "(a) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated; (b) The extent to which the injured party may be adequately compensated in damages for lack of complete performance; (c) The extent to which the party failing to perform has already partly performed or made preparations for performance; (d) The greater or less hardship on the party failing to perform in terminating the contract; (e) The wilful, negligent or innocent behavior of the party failing to perform . . ."

And, under Section 346, relating to damages for breach of a construction contract, the illustration given by the editors on page 580, paragraph 3, seems appropriate here. It is as follows: "A contracts to build a dwelling for B for $70,000 according to plans and specifications one of which is the use of 'Alpha' pipe for plumbing. A completes the dwelling, using 'Beta' pipe, a kind fully as good as 'Alpha'. A's breach is minor and not wilful. B refuses to pay anything. A can get judgment for the contract price; B's counterclaim is merely nominal."

Appellee having suffered no loss, has no counterclaim, and is entitled to no compensation, for which reason no deduction can be made for him from appellant's claim.

We would not give the impression that anything less than full performance is the duty of everyone who makes a contract. Our position in allowing recovery is very well stated by Judge CARDOZO in *Jacob & Youngs v. Kent,* supra, when he said: "The courts never say that one who makes a contract fills the measure of his duty by less than full performance. They do say, however, that an omission, both trivial and innocent, will sometimes be atoned for by the allowance of the resulting damage, and will not always be the breach of a condition to be followed by a forfeiture . . . We must weigh

the purpose to be served, the desire to be gratified, the excuse for deviation from the letter, the cruelty of enforced adherence. Then only can we tell whether literal fulfillment is to be implied by law as a condition. This is not to say that the parties are not free by apt and certain words to effectuate a purpose that performance of every term shall be a condition of recovery. That question is not here. This is merely to say that the law will be slow to impute the purpose, in the silence of the parties, where the significance of the default is grievously out of proportion to the oppression of the forfeiture". See also *Hempfield T. S. Dist. v. Cavalier,* 309 Pa. 460, 164 A. 602; *Navarro Corp. v. Pittsburgh Sch. Dist.,* 344 Pa. 429, 25 A. 2d 808.

We think the learned Superior Court was in error in holding that the phrase "which would require blasting" is equivalent to "requires blasting", and is mandatory. We think such conclusion unreasonable, when viewed in the light of the grievous damage and loss it would visit upon appellant. That phrase is simply descriptive of the kind of rock which was to be removed, and for which extra compensation was provided. At any rate, it seems to us that such interpretation is fair and reasonable, is free from being harsh and does not lead to a forfeiture, which in and of itself is "abhorrent to the law, and unless expressed with clearness and certainty, . . . will never be enforced": *Baldwin v. Amer. Motor Sales Co.,* 309 Pa. 275, 163 A. 507.

Much is said about the certificate of the architect, and throughout it seems to be the thought that appellant was delinquent in not securing the certificate and presenting it to appellee or the owner. There is nothing in the contract requiring appellant to do any such thing. The architect was the agent of the owner, appellee was his general contractor, it was their duty to present the certificate to the owner, and within a reasonable time after appellant had completed his contract. It was no fault of appellant that the architect would not give him

a certificate, or that he delayed in doing so until appellant's counsel demanded it.

Judgment of the Superior Court is reversed; judgment is here entered in favor of appellant and against appellee in the sum of $902.00 with interest.