## Miller v. Richland Greens Golf Center, Inc.

*DiFrancesco and DiFrancesco* and *Abood, Rodkey & Eckel,* for plaintiff.

*Gilbert E. Caroff, Thomas A. Young* and *Daniel R. Lovette,* for defendants.

McDONALD, *P. J.,* May 21, 1974—This matter is before the court on plaintiff's petition for involuntary dissolution of defendant corporation, appointment of a custodian under section 513.1 of the Business Corporation Law of May 5, 1933, P.L. 364, as amended, 15 P.S. §1513.1 and relief under paragraph 6 of an agreement executed October 12, 1973, between plaintiff and defendant, Mark R. Miller.

At a pretrial conference, it was agreed, in view of the uncertainty of the present ownership of the stock plaintiff agreed to sell in the aforesaid agreement, that testimony be taken to determine if there had been a breach of that agreement. In event of breach, the court would then determine the remedies of plaintiff under paragraph 6 of the agreement.

The testimony indicates the agreement was executed October 12, 1973. By its terms the parties agreed, inter alia, ". . . one party or the other shall own all the outstanding stock of the corporation." Defendant, Mark Miller (hereinafter referred to as "defendant") agreed to pay the total sum of $30,000 for plaintiff's stock, which, upon completion of the

schedule of payments, would be transferred to him by the Moxham National Bank, pledgee and escrow holder, under a warrant of attorney executed by plaintiff.

The agreement provided, in paragraph 2:

"2. Buyer will, ninety (90) days from the date hereof, furnish the seller with releases, discharging him from the following obligations:

"a. Archie H. Sweeney, fifteen thousand dollars ($15,000.00) Dated January 30, 1973.

"b. Park D. Leffler, three thousand seven hundred fifty dollars ($3,750.00) dated January 30, 1973.

"c. Herman O. Weaver, six thousand two hundred fifty dollars ($6,250.00) dated January 30, 1973."

And, in paragraph 4:

"4. No obligation shall be incurred by the Corporation other than for services and supplies in the ordinary course of business, nor shall any lien of any nature be created against the corporation without the express written consent of the seller, the intent of this provision being that the liability of the seller shall not be increased, nor shall the security for the provisions of the buyers obligation hereunder be impaired."

In event of a breach by the buyer, paragraph 6 provides plaintiff "Shall have the right to apply for the appointment of a receiver . . .," and at his election to purchase all stock of the corporation by paying defendant $30,000, to reimburse for all installments paid by defendant to plaintiff, and also payments made by defendant to the creditors on obligations set forth in paragraph 2.

In accordance with provisions of the contract, defendant made payment of $5,000 at the time of the execution of the agreement, $10,000 within 90 days, and payments of $420 each on January 1, February 1 and March 1, 1974. Plaintiff returned the latter two checks to Gilbert Caroff, Esq., who had prepared the agreement and was at the time representing both parties.

On December 31, 1973, checks in the amount of one-half of the obligation set forth in paragraph 2 were paid to each of the creditors. A release and satisfaction of plaintiff's debt was obtained from each creditor and subsequently filed in the prothonotary's office on February 16, 1974. In a telephone conversation prior to January 12, 1974 (within 90 days after execution of the agreement) plaintiff was told by Attorney Caroff "everything was in order," and from this, plaintiff assumed the creditors had been paid. Attorney Caroff testified the releases and satisfactions were in his possession and being held, since plaintiff had advised him by letter he would meet with him on February 12th. On February 8th, this meeting was cancelled by plaintiff.

On February 5, 1974, Elizabeth Hale, secretary of the corporation, executed a security agreement with the National Cash Register Company for the purchase of two cash registers. The extensive testimony on the need for these registers indicated the old registers, which were in use at the time of the execution of the agreement, were inaccurate; and the new system would result in not only accurate accounting but also prevent any dishonesty of the employes. A security agreement was filed in the prothonotary's office. This agreement provided,

inter alia, that the registers remained the property of the National Cash Register Company until all installment payments were paid. There was no confession of judgment clause in the agreement, nor any accompanying note.

Plaintiff contends the agreement of October 12th was breached by (1) failure of defendant to "furnish the releases" within 90 days of the execution of the agreement, as provided by paragraph 2; (2) the purchase of the registers was a breach of paragraph 4 of the agreement. In view of these breaches, he asks the court to invoke the forfeiture clause of paragraph 6.

We are satisfied there was no breach of paragraph 2. It is clear from the evidence the releases and satisfaction of plaintiff's debt by the three creditors named in that paragraph were obtained prior to January 12, 1974, or within 90 days of the execution of the agreement. They were in possession of Attorney Caroff, who at that time was acting for both parties. Plaintiff admits he was advised of this by Caroff. We construe the possession of the releases by Caroff as possession by plaintiff. The failure to physically place these releases into his hands is not, in our view, a breach of contract, and even if it were, it is not such a breach as would require forfeiture of the entire agreement. A reading of the agreement indicates its primary purpose was to ensure payment of the purchase price by defendant. The execution of the releases and satisfactions prior to the due date, lack of damage to plaintiff, and possession of said instruments by Attorney Caroff was, in our view, substantial performance of paragraph 2 of the agreement. The drastic penalty of forfeiture will not, in such case, be enforced:

Sgarlat v. Griffith, 349 Pa. 42; Greentree Borough to use v. Tortorete, 205 Pa. Superior Ct. 532.

We are equally satisfied the purchase of the register system was not a breach of paragraph 4 of the agreement. It is clear the execution of the financing statement and filing of the security agreement did not create a lien against the corporation. Ownership of the registers was retained by the seller, National Cash Register Company. There was no default of payments; hence, no acceleration of the debt secured by the machines. Even though the payments had been in default, the remedy of the seller was repossession. As indicated by plaintiff's argument, a judgment may be entered against the corporation in event of a deficiency after repossession and sale: Uniform Commercial Code, Act of April 6, 1953, P.L. 3, sec. 9-504, as amended, 12A P.S. §9-504(2). This would create a lien. However, under the present posture of this case no such action has occurred, and the allegation thus is premature.

It is equally apparent no additional liability could have existed against plaintiff as a result of the purchase of the registers, since the security agreement was executed after the agreement of October 12, 1973, and all assets of the corporation at the time of that agreement, including the old registers, were still in possession of the corporation; hence, the intent of paragraph 4, not to increase the liability of plaintiff or impair the security provisions of defendant's obligation was not violated.

Plaintiff also argues the broad language of paragraph 4 prohibits the incurring of any obligation by the corporation. This, too, must be read with the additional provision that such action shall not in-

crease the liability of plaintiff or impair the security for the provisions of defendant's obligation. Technically, an obligation is incurred in that the corporation has agreed to assume payments on the registers over a 36-month period. However, these registers are used by the corporation in its business. Payments are made from the receipts of the business, to which defendant is entitled. The liability of plaintiff is not increased, nor is any security for defendant's obligation impaired. The transaction at this point has not increased the indebtedness of the corporation as it existed at the time of the agreement. The recourse of National Cash Register Company is repossession of its property in event of a default in payment. Until this occurs and some action is taken to enforce a deficiency, if any exists, the corporation's financial status remains the same. We fail to see how the execution of the security agreement has in any way violated the intent of paragraph 4.

Even with the tenuous interpretation it is an incurred obligation without written consent of plaintiff, we cannot in law or equity hold it is such as to call forth the drastic remedy of forfeiture; this, particularly in view of defendant's faithful performance of the primary obligation of payment, and tender of anticipated payment of the balance of the purchase price as provided in paragraph 1(g) of the agreement. The primary purpose of the agreement has been accomplished without increased liability to plaintiff, impairment of any security or any damage whatsoever. To allow a forfeiture under the evidence here offered would be a drastic penalty for an innocent act which has resulted in no damage to plaintiff or in anywise impaired the execution of the primary purpose of the agreement. In such case,

the law does not favor forfeitures which will prevent a party to a contract from acquiring that for which he has substantially paid: Fogel Refrigerator Company v. Oteri, 391 Pa. 188; Doyle v. McClurkin et al., 393 Pa. 444; Shaw v. New Amsterdam Casualty Co., 310 Pa. 213; Sgarlat v. Griffith, supra; Greentree Borough to use v. Tortorete, supra.

We conclude, therefore, plaintiff has failed to show a breach of the agreement of October 12, 1973, which will impel this court to impose the penalty of forfeiture under paragraph 6 of the agreement.

## ORDER

Now, May 21, 1974, after hearing and upon consideration of the record, evidence and briefs, plaintiff's petition is hereby dismissed.