**Inklovich v. Johnson**

C.P. of Allegheny County, Nos. AR 13-1407; 1613 WDA 2014

*Justin R. Lewis*, for plaintiff.

*Anthony C. Mengine* and *Brittani R. Hassen*, for defendant.

HERTZBERG, *J.*, Nov. 21, 2014—On June 5, 2011 defendant Phil Johnson ("landlord" hereinafter) and plaintiff Joshua Inklovich ("tenant" hereinafter) entered into a written agreement for the rental of the residence located at 218 Frederick Ave FRONT, Sewickley, Pa

15143. *See* Exhibit A from 7/22/2014 trial ("Exhibit A" hereinafter). The term of the agreement was three years, from July 1, 2011 to June 30, 2014, with a $1,500 security deposit and monthly rent of $1,500. The agreement required tenant to pay landlord $1,500 for the last month's rent prior to occupancy and then an additional $3,000 after occupancy in $250 per month installments for the $1,500 security deposit and a second month's rent in advance. *See* Exhibit A, pp. 7-8. Hence, tenant had to provide landlord with a total of $4,500, or the equivalent of three months of rent, for security against damage to the residence and default in the payment of rent. Landlord requested the provision for payment of two months of rent in advance when he found tenant had a low credit score, and tenant was agreeable to satisfying landlord's concern over the credit score by paying the two months of rent in advance. *See* transcript of non-jury trial, 7/22/2014 ("T." hereinafter), pp. 55-58.

Tenant paid landlord $1,500 prior to occupancy and each of the $250 per month installment payments after occupancy until landlord received the additional $3,000. Tenant also paid landlord each $1,500 monthly rental payment when due until a dispute arose between them. Landlord testified credibly that tenant seemed satisfied until July of 2012 when lightning felled a tree near the residence, damaging tenant's automobile, and tenant's losses were not covered by either landlord's or tenant's insurance. T., pp. 81-84. In December of 2012, while continuing to occupy the residence, tenant stopped paying his rent to landlord and allegedly paid the rent into an "escrow" account in tenant's name at a bank. T., pp. 154-155; Exhibit D from 7/22/2014 trial.[1]

---

1. Tenant deposited no funds into escrow with the department of court records under Magisterial District Judges Rule 1008 entitled "appeal as supersedeas." Tenant also deposited no funds into escrow under

On December 13, 2012 tenant sued landlord in a Magisterial Court. After the Magisterial District Justice decided the dispute in favor of landlord, tenant appealed to the Court of Common Pleas of Allegheny County. Tenant filed a complaint against landlord on April 22, 2013 requesting monetary damages arising from landlord's alleged breaches of warranties of habitability and quiet enjoyment as well as a declaration that the rental agreement was void and unenforceable. Landlord filed a counterclaim requesting $1,500 per month rent from December of 2012. On August 30, 2013, tenant's counsel notified landlord's counsel that tenant had vacated the residence. A compulsory arbitration panel then heard the dispute but awarded tenant no monetary damages and instead found tenant owed landlord $12,300.

Tenant then filed an appeal from the arbitration award, and I presided over the non-jury trial. I also found tenant was not entitled to any monetary damages but that tenant owed landlord $9,250.[2] Tenant filed a motion for post-trial relief, which I denied. Tenant then filed a notice of appeal to the Superior Court of Pennsylvania and a "rule 1925(b) concise statement of errors complained of on appeal" ("concise statement" hereinafter). This opinion will next address each error that tenant alleges I made. *See* Pa. R.A.P. No. 1925(a).

Tenant first argues that landlord "breached paragraph 42(b) of the lease" (Concise statement, ¶ nos. 2 and 3), which obligates landlord to comply "with all state, county

---

35 P.S.§1700-1 entitled "dwellings unfit for habitation." At trial, tenant's counsel reported that he became the holder of the funds that tenant had previously been putting in an account in tenant's name. T., pp. 154-155.

2. I calculated this verdict by determining tenant owed landlord nine months of rent at $1,500 per month, which equals $13,500. I subtracted $4,250, which was the security deposit and prepaid rent less $250 for personalty tenant bought from landlord. I arrived at a net amount owed to landlord of $9,250.

and/or municipal codes." I agree with tenant that landlord breached this provision since the Pennsylvania Landlord and Tenant Act prohibits security deposits in excess of two months during the first year and in excess of one month during the second year of any residential lease. *See* 68 Pa.C.S.§ 250.511a. I do not, however, agree with tenant's implicit argument that because of this breach landlord forfeits his claim to all rent due him under the lease.[3] The Pennsylvania Landlord and tenant act provides no guidance on an appropriate remedy when a landlord requires too large of a security deposit. *Id.* I decided a partial forfeiture was appropriate and reduced landlord's damages by the "unpaid rent between the date tenant vacated the premises and the end date of the lease." 7/23/2014 findings. Thus, as a result of the security deposit exceeding the amount permitted by law, I prohibited landlord from claiming any rent from September 1, 2013 to June 30, 2014, a forfeiture of as much as $15,000 (ten months at $1,500 per month equals $15,000).

The doctrine of "substantial performance" protects landlord's right to compensation for at least the rent during tenant's occupancy unless the breach amounts to a material failure of performance. *See Sgarlat v. Griffith*, 349 Pa. 42, 36 A.2d 330 (1944). Tenant testified he needed the excess security deposit to move out of the residence before the end of the term and be able to invoke the "opt-out" provision of the lease. *See* Exhibit A, p. 7, ¶ no. 50(g) ("This contract may be terminated by tenant without cause or additional penalty at any time...between 07-02-2013 and 08-02-2013 with 30 days written notice and a liquidated damages payment of $1,550.00...") However, tenant failed to prove any damages from being unable

---

3. Tenant explicitly made this argument in his "motion in limine for partial summary judgment" on the record immediately before the trial. *See* T., pp. 3-13.

to leave the residence sooner, since tenant testified only that he was able to purchase a home, but not that the purchase reduced his housing expense. T., p. 65. In any event, tenant's testimony on the issue was not credible but instead was merely an "after-the-fact" effort to establish financial injury when none was incurred. Thus, the holding of the excess security deposit was a technical, inadvertent, or unimportant defect and not a material failure of performance. *Id.* Hence, even though landlord technically breached the contract, my decision to compensate him for rent during tenant's occupancy was correct.

Tenant next argues that landlord breached the implied "warranty" of quiet enjoyment. *See* concise statement, ¶ nos. 4 and 6. A landlord breaches the covenant of quiet enjoyment by wrongful conduct that interferes with the tenant's possession of the leased premises. *See Kohl v. PNC Bank Nat. Ass'n*, 590 Pa. 151, 912 A.2d 237 (2006). A classic example of a breach of the covenant of quiet enjoyment is when a landlord locks a tenant out of the leased premises. *See Minnich v. Kauffman*, 265 Pa. 321, 108 A.2d 597 (1919). In these proceedings, tenant did not specify particular conduct of landlord that interfered with tenant's possession of the residence during the trial, and the motion for post trial relief and the concise statement generally allege a breach of the covenant without specifying any wrongful conduct. The complaint identifies seven items that allegedly violate the covenant, but none involve any interference by landlord with tenant's possession of the leased premises.[4] Since tenant

---

4. In paragraph no. 10 of the complaint tenant alleges landlord's failure to provide GFCI outlets in the bathroom, vent the dryer, cap the gas lines, provide handrails and repair a fence breached both the covenant of quiet enjoyment and the warranty of habitability. In paragraph no. 12 of the complaint tenant alleges a tree on the premises that fell and damaged his automobile and landlord's failure to adequately respond to numerous service requests breached the covenant of quiet enjoyment.

failed to specify any conduct that interfered with tenant's possession of the premises, I properly found the covenant of quiet enjoyment was not breached.

Tenant next argues that landlord breached the implied warranty of habitability and paragraph 42(a) of the lease, which similarly obligates landlord to keep the premises habitable. *See* concise statement, ¶ nos. 5 and 6. A defect that prevents a dwelling from being used for habitation constitutes a breach of the implied warranty of habitability. *Pugh v. Holmes*, 486 Pa. 272, 405 A.2d 897 (1979). A breach of the implied warranty of habitability claim is not valid unless the tenant gives the landlord notice of the defect and a reasonable opportunity for repair. *Id.* Between tenant's testimony and the Allegheny County Health Department October 24, 2012 Inspection Report admitted into evidence at trial (*see* trial Exhibit C), at least twelve items are described that could be defects. However, none of tenant's testimony about alleged defects was credible. In addition, the Health Department's January 22, 2013 Inspection Report (Trial Exhibit F), made after landlord had a reasonable opportunity for repair, noted that the only two items remaining are "minor" and are "not used to determine fitness for human habitation." Trial Exhibit C. In any event, landlord provided credible testimony that those two items remaining, a loose heat duct and a screen that allegedly allowed squirrels to enter the attic, were either repaired by contractors or never a problem. *See* T., pp. 51, 78-80 and 84-87. Therefore, my determination that landlord did not breach the implied warranty of habitability or the lease habitability provision was correct.

Tenant next argues I should have awarded him attorney fees under paragraph 32(a) of the Lease, which provides that landlord is "responsible for all legal and collection costs associated with a breach of this agreement by landlord provided written notice of such breach has been

given landlord and landlord has failed to cure." *See* concise statement, ¶ no. 7; exhibit A. However, landlord cured the habitability defects that tenant gave notice of in tenant's 11/26/12 letter (*see* Trial Exhibit D) and in the health department's October 24, 2012 inspection report. While the excess security deposit constitutes a technical breach of contract, tenant's four page 11/26/12 letter admitted into evidence as Trial Exhibit D neither notifies landlord of this breach or requests that all or part of the security deposit be returned. Tenant then initiated litigation against landlord, and due to tenant's decision to withhold payment of rent while occupying the residence for nine months, it was landlord who incurred "collection costs." Since landlord cured any breach of the lease that he was notified of and tenant had no "collection costs," my decision to deny tenant an award of attorney fees was correct.

Tenant next argues I should have found "the lease to have been terminated pursuant to Paragraph 40." Concise statement, ¶ no. 8. Lease paragraph no. 40 states:

> Any items of this agreement that are not followed will result in a termination of this agreement. The remaining payments of this contract become due and payable upon such termination.

Hence, had I found the Lease was terminated, the rent until the end of the lease remains due. Therefore, whether or not the lease was terminated is inconsequential, and my failure to make such a finding was not erroneous.

Tenant next argues I should not have awarded landlord damages. *See* concise statement, ¶ no. 9. Since tenant does not provide further elaboration on this argument, I must presume the reason tenant argues Landlord should not have been awarded damages is landlord's alleged breaches of the warranties and of the lease. As explained above, the technical breach of the lease from the excess

security deposit does not justify a forfeiture of rent owed landlord during tenant's occupancy and there was no breach of either the covenant of quiet enjoyment or the implied warranty of habitability. Therefore, my decision to award landlord damages was correct.

Tenant's final argument is that my decision to offset the security deposit from landlord's damages was incorrect because I should have doubled the amount of the security deposit. Tenant makes this argument in reliance on 68 P.S. §250.512(c). For a proper analysis of this argument, 68 P.S. §250.512 subsections (a) and (b) must be scrutinized along with subsection (c). Here are all three subsections:

> (a) Every landlord shall within thirty days of termination of a lease or upon surrender and acceptance of the leasehold premises, whichever first occurs, provide a tenant with a written list of any damages to the leasehold premises for which the landlord claims the tenant is liable. Delivery of the list shall be accompanied by payment of the difference between any sum deposited in escrow, including any unpaid interest thereon, for the payment of damages to the leasehold premises and the actual amount of damages to the leasehold premises caused by the tenant. *Nothing in this section shall preclude the landlord from refusing to return the escrow fund, including any unpaid interest thereon, for nonpayment of rent* or for the breach of any other condition in the lease by the tenant.

> (b) Any landlord who fails to provide a written list within thirty days as required in subsection (a), above, shall forfeit all rights to withhold any portion of sums held in escrow, including any unpaid interest thereon, or to bring suit against the tenant for damages to the leasehold premises.

(c) If the landlord fails to pay the tenant the difference between the sum deposited, including any unpaid interest thereon, and the actual damages to the leasehold premises caused by the tenant within thirty days after termination of the lease or surrender and acceptance of the leasehold premises, the landlord shall be liable in assumpsit to double the amount by which the sum deposited in escrow, including any unpaid interest thereon, exceeds the actual damages to the leasehold premises caused by the tenant as determined by any court of record or court not of record having jurisdiction in civil actions at law. The burden of proof of actual damages caused by the tenant to the leasehold premises shall be on the landlord.

(emphasis added)

Landlord's credible, undisputed testimony established that tenant left the premises in good condition and the security deposit was not withheld due to physical damage. T., pp. 145-146. Subsection (c) above, which doubles a landlord's liability for an improperly held security deposit, applies only to a security deposit withheld due to physical damages to the premises. A landlord is not obligated to provide a written list to the tenant and there is no doubling of any part of the security deposit when it is withheld due to the tenant's nonpayment of rent. *See McEvilly v Tucci*, 239 Pa. Super. 474, 479 n. 4, 362 A.2d 259, 261 n. 4 (1976). Therefore, I was correct in not doubling the security deposit amount that I offset from landlord's damages.