Schlein *v.* Gross et ux., Appellants.

Argued March 25, 1958. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

*Roland Fleer,* for appellants.

*Cassin W. Craig,* with him *Wisler, Pearlstine & Talone,* for appellees.

OPINION BY WATKINS, J., June 11, 1958:

This is an appeal from an order of the Court of Common Pleas of Montgomery County dismissing exceptions, and directing the entry of judgment in an action of assumpsit in favor of Benjamin V. Schlein and Martin B. Schwartz, trading as Master Masons Construction Company, the appellees, and against Jerome Gross and Sylvia K. Gross, husband and wife, the appellants, in the sum of $4,343.97.

This is an action in assumpsit for a balance alleged to be due on a building contract between the parties for the construction of a dwelling house in Merion, Montgomery County, Pennsylvania. The contract price was $38,500 with one extra of $15. There is no conflict between the parties concerning the contract price. The plaintiffs appellees allege as a basis of their suit a balance due on the construction contract of $5,080. They arrive at this balance as the difference between the admitted contract price and what they claim the appellants paid and are entitled to in credits.

The appellants deny that the credits allowed are accurate and that they are entitled to certain additional items. They further counterclaim for damages for breach of contract with respect to the plastering of the interior walls and ceilings of the house and in mislocating the house on the lot. The additional credits claimed amounted to $1,503.72 and the damages alleged in the counterclaim amounted to $10,844.27.

By agreement, the case was tried by the court without a jury. Judge WILLIAM F. DANNEHOWER, who tried the case allowed the appellants additional credits of $215.97 for a dishwasher and disallowed credits of $200 paid for plans and $677.75 for stone work. He allowed the appellants $950 for defective plastering, disallowed the damages claimed for mislocating the

house, and rendered a verdict in favor of the appellees for $3,913.53 with interest at 3% from April 25, 1952 to January 11, 1957 and costs, or a total verdict of $4,343.97. The appellants' exceptions were argued before the Court en banc and were dismissed, and judgment was directed to be entered on the verdict.

Most of the questions involved in this appeal are factual ones, involving the amount the appellants are entitled to as a credit on an admitted balance due on their building contract. It has been frequently held that where a case is tried by the court without a jury, the findings of fact approved by the court en banc are binding on appeal when based on sufficient evidence to support a verdict. *Smith v. Kingsley*, 331 Pa. 10, 14, 200 A. 2d 11 (1938); *Logan Lumber Co. v. Knapp*, 155 Pa. Superior Ct. 580, 582, 39 A. 2d 275 (1944); and, of course, the trial judge's findings of fact are entitled to great weight because he had an opportunity to hear the witnesses, evaluate their testimony, test their credibility and, in this case, had the advantage of a personal inspection of the premises to guide him in his verdict.

This appeal is based on exceptions to the allowance by the court below of only $215.97 out of a $225.97 claim for credit for a dishwasher; disallowance of credits of $200 paid for plans, and $677.75 for stone work; and for allowing only $950 out of $8,780 claimed as damages in a counterclaim for defective plastering and disallowance of all damages claimed for mislocating the house.

We will not discuss the matter of the dishwasher and the plans as they are so palpably matters of fact to be disposed of by a jury, or as in this case, the court sitting as a jury, and the findings being supported by competent evidence.

The evidence disclosed that the second floor ceiling and walls did develop a number of cracks and sags. All of these appeared on the plastered surfaces where fibre board lath had been used in place of rock lath. The use of this material was brought about by the difficulty of obtaining rock lath and the fibre lath used was supplied by the appellants. The material seemed structurally unstable in the presence of moisture, including wet plaster, and it did settle into a marked curvature. This result was not discovered until after its use at the appellants' request. They further complain, however, that the appellees failed to follow the instructions for the use of $\frac{1}{2}$ inch plaster on the temloch fibre lath and followed instead the usual trade practice of $\frac{3}{8}$ inch plaster as used for rock lath. There was no evidence, however, that even if the appellees had used one-half inch plaster instead of $\frac{3}{8}$ inch that the resulted sagging and cracking would have been avoided.

The witnesses for the appellants testified that the cost of replastering and relathing the entire house, the removal of the furniture and repainting would cost $8,780, while the witnesses for the appellees testified that the work necessary to correct the defects would cost $749.50. However, the appellees vigorously denied that they were in any way responsible for the defective plastering but blamed the defects on the use of the lath supplied by the appellants. The finding of the court below in the amount of $950 was the common sense approach of a fact finder that had examined the property, heard the witnesses and arrived at a result that would make the appellants whole. It is the kind of a finding supported by competent evidence that should not be interfered with on appeal.

The extra stone work, under the terms of the written contract was to be "plain stone work, no smearing".

However, at the time the stone work was to begin the appellants wanted a costlier "raked joint" job which required additional labor and face stone. They then entered into a separate and direct contract with the stone mason at an additional cost of $2,000. The appellees agreed to pay one-half of this additional cost. The court below found that the $1,000 was credited to the appellants and they are not entitled to any further credits, as any additional cost to them was the result of their separate contract with the stone mason. Again this factual finding is supported by competent evidence and will not be disturbed.

In regard to the claim for damages for negligence in the location of the property, Judge DANNEHOWER states the problem in his opinion: "Defendants next except to the finding of the trial Judge that they are not entitled to $1,970.07 for the alleged negligence of the builders in locating the house and garage on the lot. Defendants urge that poor planning and carelessness have made it impossible for them to negotiate their two large automobiles from the winding street to the attached garage and park them therein because they should have had a 24 foot turning radius from the division line instead of 19 feet 3 inches. The house is a large one for the size of the lot and is located on a bend or curve in the public roadway. Plaintiffs were compelled to draw new plans and rotate, reverse, and re-orient the Elkins Park house. They placed stakes on defendants' lot. Defendants could have observed the stakes. They saw the layout and excavations and almost daily watched the progress of the work. Defendants practically supervised the work. They modified the contract with the stone mason, and supplied the builder with equipment and building material not readily available on the market. In the counterclaim, defendants originally claimed $2,250.00 for a new two

car garage on their rear lot; $750.00 to close up the attached garage; and $1,000.00 for depreciation to their property, or a total of $4,000.00. None of this work was ever done. However, their next door neighbor sold them a pieshaped piece of ground for $250.00, and in addition thereto they desire to recover surveyors' fees—$80.00, architect fees—$120.00, and relocating the driveway and walk, and sodding and curbing—$1,520.07, or a total of $1,970.07. While these expenditures probably resulted in substantial improvement and increase in valuation of the property and were not made for two or three years after the house was completed, nevertheless defendants seek to charge plaintiffs for their negligence in mislocating the buildings on the lot. These exceptions should likewise be dismissed, since defendants have failed to prove their right to recover by the weight or fair preponderance of the evidence and did not complain to plaintiffs until after suit was brought for the balance due." We find nothing wrong with this conclusion of the court below.

The appellants, in their brief, contend that this case falls within the principle that a material failure of performance by one party to a contract discharges the duty of the other party to perform the promise. The doctrine of substantial performance has been developed by the courts as an instrument of justice. *Jacob & Youngs v. Kent,* 230 N.Y. 239, 129 N.E. 889. "This Court has always turned its face against forfeitures. We said in Morgan v. Gamble, 230 Pa. 165, 79 A. 410: 'The equitable doctrine of substantial performance is intended for the protection and relief of those who have faithfully and honestly endeavored to perform their contracts in all material and substantial particulars, so that their right to compensation may not be forfeited by reason of mere technical, inadvertent, or unimportant omissions or defects'." *Sgarlat*

*v. Griffith,* 349 Pa. 42, 46, 36 A. 2d 330 (1944). See also: *Mort Company v. Paul,* 167 Pa. Superior Ct. 532, 76 A. 2d 445 (1950), where this Court said at page 534, "Under the Pennsylvania concept of the rule the presence or absence of good faith, i.e., whether the breach was willful or merely inadvertent, is extremely important."

The Restatement of Contracts, Section 274, page 399, Subsection (1), makes it clear that only material failure of performance by one party discharges the other. An immaterial failure does not operate as such a discharge. Section 275, pages 402-3 provides as follows: "In determining the materiality of a failure fully to perform a promise the following circumstances are influential:

"(a) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;

"(b) The extent to which the injured party may be adequately compensated in damages for lack of complete performance;

"(c) The extent to which the party failing to perform has already partly performed or made preparations for performance;

"(d) The greater or less hardship on the party failing to perform in terminating the contract;

"(e) The wilful, negligent or innocent behavior of the party failing to perform."

The reading of these rules, of itself, is sufficient answer to the contention of the appellants. The appellants under this verdict will obtain all the substantial benefits that they could have reasonably anticipated; they can be adequately compensated for any injuries they complain of and the fact finding body has determined that compensation; the appellees have very substantially completed their contract so much so that

the appellants have had the use of the completed property for several years; a discharge of performance would amount to a forfeiture; and the failure to perform in this case, if any, was certainly not wilful and might very well have been innocent.

Judgment affirmed.