452 A.2d 835

FIRST MORTGAGE COMPANY OF PENNSYLVANIA,

v.

Milton J. CARTER, and Patricia E. Carter; Jerome J. Weingarten and Dorothy I. Weingarten, a/k/a Dorothy S. Weingarten, Victor Henry Associates, Inc.

Appeal of Milton J. CARTER and Patricia E. Carter and Jerome J. Weingarten and Dorothy I. Weingarten a/k/a Dorothy S. Weingarten.

Superior Court of Pennsylvania.

Argued Jan. 25, 1982.

Filed Nov. 19, 1982.

Walter D. Campbell, Levittown, for appellants.
Richard F. Stern, Jenkintown, for appellee.

Before WIEAND, CIRILLO and POPOVICH, JJ.

WIEAND, Judge:

After a loan transaction has been completed and the borrowers' corporate nominee has thereafter made a total of twenty-one monthly repayments of principal and interest, can the borrowers defend an action in assumpsit for the defaulted, unpaid balance by contending that the lender failed at settlement to make certain disclosures in the manner required by the loan agreement? We conclude that where, as here, the borrowers have failed to show any damage as a result of the lender's technical and insignificant omissions, they cannot avoid liability by rescinding the transaction. A judgment entered in favor of the lender for the unpaid balance of the loan, therefore, will be affirmed.

In January, 1975, Jerome J. Weingarten and Milton J. Carter associated with Larry Levine in a partnership for the purpose of purchasing a business being operated in Fairless Hills, Bucks County, under the name of the "Singer Company." Initial efforts to obtain a loan to finance the purchase price were unsuccessful, but eventually a loan commitment was obtained from First Mortgage Company of Pennsylvania, the appellee. Thereafter, an agreement to purchase the business was entered, and a corporation, known as "M and J Sales and Service, Inc.", was formed to take title. At settlement the funds necessary to complete the transaction were advanced by appellee for use by M and J Sales and Service, Inc., and the borrowers agreed to repay the loan at the rate of $1,206 per month for eighty-four months. The loan was secured in part by second mortgages on residences owned by Carter, Weingarten and Levine. After twenty-one payments on account of the loan had been made, the loan went into default. On February 10, 1977, Levine paid $20,000 to appellee and, with the consent of all parties, was released from further liability. An action in assumpsit was commenced against Carter and Weingarten and their wives for the unpaid balance, together with interest and attorney fees. Their answer to the complaint included a counter-

claim, which contained averments that they were entitled to rescind the loan transaction without making repayment. The action was tried non-jury and resulted in a decision in favor of the appellee-lender for $88,914.57. Exceptions thereto were dismissed, and judgment was entered on the decision of the trial court.

On appeal, it is contended by appellants that the trial court erred in refusing to find that the lender had failed to comply with provisions of the federal Truth in Lending Act of 1968, 15 U.S.C. § 1601 et seq. It is contended that this Act, although inapplicable to loans made for use by a corporation,[1] was made applicable to the instant loan because of the following language contained in appellee's letter of commitment:

> "It is understood and agreed by the parties hereto that, while the written loan transaction is exempt from the provisions of the 1968 Consumer Trade Protection Act, commonly known as 'Truth in Lending', in that it is a loan to a corporation, the aforesaid loan will be consummated in accordance with all the provisions of the aforesaid 'Truth in Lending Act'".

Appellants argue, as they did in the court below, that appellee failed to consummate the loan transaction in accordance with the Truth in Lending Act. The loan disclosure statement, they contend, did not correctly label or disclose the amount financed, did not with sufficient accuracy describe the annual interest rate, did not recite the total sum of the monthly payments, failed to print required disclosures with sufficient conspicuousness, and contained various alleged ambiguities. They also contend that not every guarantor received a copy of the loan disclosure statement. The trial court found that minor technical violations had occurred but that appellants failed to prove that any loss or damage had resulted therefrom. In the absence of

1. In *Weingarten v. First Mortgage Company of Pennsylvania,* 466 F.Supp. 349 (E.D.Pa.1979), it was specifically held that the instant transaction was exempt from the provisions of the Truth in Lending Act. See: 15 U.S.C. § 1603(1). See also: *Poe v. First National Bank of DeKalb County,* 597 F.2d 895 (5th Cir.1979).

harm, the court refused to allow rescission or award damages to appellant.

The doctrine of substantial performance has been developed by the courts as an instrument of justice intended to avoid forfeiture because of technical, inadvertent or unimportant omissions. It is " 'intended for the protection and relief of those who have faithfully and honestly endeavored to perform their contracts in all material and substantial particulars, so that their right to compensation may not be forfeited by reason of mere technical, inadvertent or unimportant omissions or defects.' " *Schlein v. Gross,* 186 Pa.Super. 618, 624, 142 A.2d 329, 333 (1958) quoting *Morgan v. Gamble,* 230 Pa. 165, 175, 79 A. 410, 414 (1911). Accord: *Sgarlat v. Griffith,* 349 Pa. 42, 46, 36 A.2d 330, 332 (1944); *Barraclough v. Atlantic Refining Co.,* 230 Pa.Super. 276, 282, 326 A.2d 477, 480 (1974); *Charles A. Klinges, Inc. v. Camblos Construction Corp.,* 194 Pa.Super. 585, 591, 168 A.2d 916, 918–919 (1961); *Mort Company v. Paul,* 167 Pa.Super. 532, 534, 76 A.2d 445, 446 (1950); *Willard Sales & Service, Inc. v. Stevens,* 167 Pa.Super. 621, 623, 76 A.2d 225, 227 (1950); P.L.E. Contracts § 351. This does not mean that a contracting party can fulfill his contractual obligation by less than full performance. It does mean " 'that an omission, both trivial and innocent, will sometimes be atoned for by the allowance of the resulting damage, and will not always be the breach of a condition to be followed by a forfeiture . . . We must weigh the purpose to be served, the desire to be gratified, the excuse for deviation from the letter, the cruelty of enforced adherence. Then only can we tell whether literal fulfillment is to be implied by law as a condition. This is not to say that the parties are not free by apt and certain words to effectuate a purpose that performance of every term shall be a condition of recovery. That question is not here. This is merely to say that the law will be slow to impute the purpose, in the silence of the parties, where the significance of the default is grieviously out of proportion to the oppression of the forfeiture.' " *Sgarlat v. Griffith, supra* 349 Pa. at 47–48, 36 A.2d at 333, quoting

Cardozo, J., in *Jacob & Youngs, Inc. v. Kent,* 230 N.Y. 239, 243–244, 129 N.E. 889, 890–891, 23 A.L.R. 1429, 1431–1432 (1921). Accord: *Jackson v. Richards 5 & 10 Inc.,* 289 Pa.Super. 445, 456, 433 A.2d 888, 894 (1981); *Jennings v. Erie County League of Civic Organizations,* 180 Pa.Super. 398, 401–402, 119 A.2d 608, 610 (1956). See also: *Exton Drive-In, Inc. v. Home Indemnity Co.,* 436 Pa. 480, 491, 261 A.2d 319, 325 (1969), *cert. denied,* 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1970); *Greentree Borough v. Tortorete,* 205 Pa.Super. 532, 535, 211 A.2d 76, 78 (1965).

We conclude that where, as here, the benefits of substantial performance have been voluntarily accepted with knowledge that there have been omissions in achieving strict performance, the party accepting performance will be precluded from setting up such omissions as a defense to repayment of the loan that was made. See: *Orner v. McCauley,* 274 Pa. 380, 383, 118 A. 316, 316–317 (1922); *Fulton v. Miller,* 254 Pa. 363, 98 A. 1065 (1916). The loan agreement was fully executed. Final settlement was held, the proceeds of the loan were advanced and distributed, and executed security documents were delivered, all without complaint. Appellants used the money to purchase a business, and title thereto was passed to their corporation. For more than twenty-one months their corporate nominee had the use of appellee's money without any expression of dissatisfaction regarding the circumstances under which the appellee had performed its agreement to advance moneys with which to complete the transaction. Only when the business proved less successful than anticipated and the corporation defaulted in repaying the loan did appellants suggest that in making the loan appellee had failed to comply with certain technical requirements specified by the loan agreement. These omissions, the trial court found, were technical and trivial. Indeed, they were so trivial and immaterial that appellants were unable to show that any damages had been caused thereby.

Appellants contend that the Truth in Lending Act permits rescission and provides for civil penalties in the

event of uncorrected violations even where there has been no resulting loss. See: *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *Griggs v. Provident Consumer Discount Co.,* 680 F.2d 927, 930 (3rd Cir.1982); *Dixey v. Idaho First National Bank,* 677 F.2d 749 (9th Cir.1982); *Rudisell v. Fifth Third Bank,* 622 F.2d 243 (6th Cir.1980); *Gennuso v. Commercial Bank & Trust Co.,* 566 F.2d 437 (3rd Cir.1977); *Sosa v. Fite,* 498 F.2d 114, 117–118 (5th Cir.1974). However, the Truth in Lending Act is inapplicable to determine the remedies available to the parties for breach of contract. The parties' loan agreement provided only that the loan would be "consummated" in accordance with the Truth in Lending Act. Their agreement was specific in defining their intent. It did nothing more than specify the manner in which the loan was to be processed and consummated. It did not purport to provide remedies for breach which were inconsistent with general principles of contract law; and the trial court declined to find such an intent on the part of the parties to the contract. We perceive no basis for concluding otherwise.

The judgment is affirmed.