In re Paul C. STEIN, Jr., t/a Fairfax Construction Co. and Nancy A. Stein, His wife, Debtors.

Paul C. STEIN, Jr., Individually and t/a Fairfax Construction Company, Plaintiff,

v.

WILLIAM C. COX, INC. and Callahan Autobody Company jointly, severally and in the alternative, Defendants.

Civ. A. No. 85–6161.
Bankruptcy No. 83–03955G.
Adv. No. 84–0216G.

United States District Court,
E.D. Pennsylvania.

Feb. 24, 1986.

James J. Gillespie, Philadelphia, Pa., for plaintiff/debtors.

David I. Davis, King of Prussia, Pa., for defendants.

## MEMORANDUM

KATZ, District Judge.

Appellant William C. Cox, Inc. ("Cox") appeals from an order of the Bankruptcy Court, 53 B.R. 81 (1985). This court has jurisdiction of the appeal pursuant to 28 U.S.C. section 1334(a). Under Rule 8013 of the Bankruptcy Code, the appropriate standard of review is that the findings of fact of the Bankruptcy Court will not be set aside unless clearly erroneous. Bankruptcy Rule 8013. However, I must make an independent determination of the bankruptcy court's legal conclusions. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir.1981); *In re Mead Land Development Co.*, 527 F.2d 280, 282–83 (3d Cir.1975); *In re Furst, et al.*, 57 B.R. 1013, 1014 (E.D.Pa.1986); *In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328, 331 (E.D.Pa.1982).

For the reasons below, the order of the Bankruptcy Court will be affirmed.

In October, 1983, appellee, Paul C. Stein, Jr., t/a Fairfax Construction Company ("Fairfax") filed an voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Stein is the sole proprietor of Fairfax, which engages primarily in landscaping, excavating and paving. Fairfax filed the complaint giving rise to this litigation on February 16, 1984. Fairfax sought to recover for services it performed for Cox on a playground project in Philadelphia. Cox was the general contractor on the project and subcontracted demolition, landscaping and paving work to Fairfax. Fairfax also sought the return of certain equipment which Fairfax used during its work on the playground and left on the site. Fairfax alleged that Cox had later removed the equipment from the site and refused to return it to Fairfax. Fairfax also asked for compensatory and punitive damages for Cox's seizure of its machinery.

Cox, in a counterclaim, sought to recover expenses allegedly incurred in finishing the work Fairfax was supposed to complete under its contract. Cox also requested damages for Fairfax's delay in completing its portion of the playground project, a delay which allegedly set back completion of the project as a whole.

The Honorable Emil F. Goldhaber, Chief Bankruptcy Judge, held several hearings in this matter, and on September 16, 1985 issued an opinion and order. Judge Goldhaber awarded Fairfax the amount of $11,082.00 for services performed on the playground project, but denied all other relief. Cox then filed this appeal.

The Bankruptcy Court found that Cox had contracted with the City of Philadelphia for construction of the playground. Cox had then subcontracted work for demolition, excavation, paving and landscaping to Fairfax at a contract price of $32,200.00. The Bankruptcy Court found much of Fairfax's work on the playground to be below contract standards but attributed some of the substandard performance to directions from Cox. In particular, the Bankruptcy Court found that Cox had instructed Fairfax to pave when temperatures were far below optimal levels. Both Fairfax and Cox were forced to expend additional costs to correct deficiencies in work Fairfax had performed.

In addition, the Bankruptcy Court found that Fairfax had performed additional work (incurring additional costs) on the project beyond that set forth in its agreement with Cox. Fairfax had performed this work at Cox's request. Fairfax also sustained additional expenses because it had to re-do work on one of the playing fields due to discrepancies between the actual dimensions of the playground and those set forth in the plan Cox gave to Fairfax.

The Bankruptcy Court noted that Fairfax ultimately left the work site without completing all of the work required under its agreement with Cox. However, Fairfax left behind a paving machine and a tractor with a rake attachment. Cox informed Fairfax that the City of Philadelphia wanted the equipment removed from the site. Fairfax refused to remove the equipment, claiming that moving it under the current weather and ground conditions presented a substantial risk of damage to the surface of the playground. With the machinery still on the site some months after this exchange of communications, Cox removed Fairfax's equipment. The machinery was left at an uncovered area beside an auto garage. When Fairfax first requested the return of its equipment, Cox refused to turn the machines over.

The Bankruptcy Court denied relief to Fairfax in connection with its claim for damages arising out of Cox's removal and storage of its equipment. First, the court found that the machines "were of nominal value." Opinion at 83. The court also noted that Cox had urged Fairfax to move the machinery, but Fairfax had declined to do so. "Any deterioration of the equipment due to weathering and vandalism," the Court found, "could have happened while the property was resting on the playground lot, and apparently much of that damage did occur there." *Id.* at 83. Since Fairfax was now free to reclaim its equipment, the Court held that Fairfax was entitled to no damages.

The Bankruptcy Court found that Fairfax had completed 81% of the work required under the contract. Despite its finding that much of the debtor's work was sub-standard, the Bankruptcy Court ruled that Fairfax had performed substantially all of the work required and was entitled to payment for the work it had completed. Since 81% of the contract price came to $26,082.00, and Fairfax had already received payment of $15,000.00, Cox owed Fairfax $11,082.00.

In its counterclaim, Cox sought damages for overhead costs allegedly caused by Fairfax's failure to complete its portion of the playground project on time. The Bankruptcy Court found that Cox's contract with the City of Philadelphia was not fulfilled until months after the expected completion date, a fact which neither side disputed. However, the court ruled that Cox had failed to prove what portion of this delay, if any, was attributable to Fairfax. Indeed, the court found that Cox itself and other of its subcontractors—as well as Fairfax—had all contributed to the delay. According to the Bankruptcy Judge, Fairfax was no more culpable for the delay than Cox and the other subcontractors, so Cox was not entitled to damages.

Fairfax also sought damages in connection with the work that it performed beyond the scope of its agreement with Cox. On the other hand, Cox sought damages for work it performed to correct deficiencies in Fairfax's work. The Bankruptcy Court was unable to affix a dollar value for the work performed by either litigant because of the "numerous, amorphous constituent elements" of each claim for damages. Opinion at 82. The court found that "the two countercharges are approximately equal and thus nullify each other." *Id.*

Cox lists twelve bases for its appeal.[1] In its brief, Cox states that these twelve specific issue can be categorized into four factual matters and two areas of law. Cox contends that the factual errors "are clear on their face." Brief of Appellant at 19. The Bankruptcy Judge (1) found that Fairfax was instructed to pave at improper temperatures when there was no testimony or evidence to support that finding; (2) found that Cox failed to prove what portion of the delay in completing the entire playground project was attributable to Fairfax when in fact all the testimony and evidence indicated Fairfax was the sole cause of delay; (3) failed to find that Cox insured and proved damages other than delay in completing Fairfax's work; (4) found as a fact that Cox incurred extra costs as a result of Fairfax's poor workmanship but failed to make an award in its favor. *Id.*

■ Cox is correct that there is no evidence to support the contention that Cox ordered Fairfax to pave at improper *temperatures.* However, the record reflects that Cox instructed Fairfax to pave under improper *conditions;* namely under wet conditions at the project site. Stein testified that the daily *temperature* was of concern to Cox because the job was not on schedule and "[t]he City of Philadelphia states that it must be 40 degrees Fahrenheit in order to pave." Record, Sept. 25, 1984, at 46. Stein noted that when Fairfax began paving, the "weather was getting such where they wouldn't allow you to lay the paving." *Id.* at 34. Nevertheless, Cox instructed Fairfax to perform the paving. Stein testified that he had to repair the paving he did on this occasion because of the instructions to pave under improper conditions and because Cox had improperly graded the job site to allow water to run off. *Id.* at 35–37.[2]

In short, the record supports the inference that Cox ordered Fairfax to pave under improper conditions, if not under improper temperatures. I will not overturn the Bankruptcy Judge's entire holding in this case on the basis of this minor error.

■ Cox also contends that all the testimony and evidence shows that Fairfax was the sole cause of delay in completing the playground project. However, there is ample evidence in the record to support the Bankruptcy Judge's finding that Cox, as

1. Cox seeks review of the findings of fact and conclusions of law of the Bankruptcy Judge in the following areas:

   1. Finding that the debtor completed 81% of the work required under the contract.

   2. Failing to find that all the work that was completed by Fairfax was completed in an unsatisfactory manner.

   3. Finding that a portion of Fairfax's substandard work was caused by Cox.

   4. Failing to find that Cox was entitled to recover for expense incurred in remedying Fairfax's defects and completing the project.

   5. Failing to find that Fairfax was the sole cause of delay on the project.

   6. Failing to find that Cox was entitled to recover costs and expenses associated with removing and storing Fairfax's equipment.

   7. Finding that the project was delayed by Cox and other subcontractors.

   8. Failing to find that Fairfax failed to prosecute its work diligently and properly.

   9. Failing to find that Fairfax failed to provide all necessary labor and materials under the contract.

   10. Failing to find that Fairfax failed to perform its work in a competent and workmanlike manner.

   11. Failing to find that Fairfax failed to perform its obligations under the contract timely.

   12. Failing to find that Cox is properly entitled to delay damages by reason of Fairfax's breach.

2. There was conflicting testimony as to whether Cox or Fairfax was responsible for grading the site. The Bankruptcy Court found Cox to be responsible for this part of the project. As the record supports this conclusion, I cannot say that it is clearly erroneous.

well as Cox's other subcontractors, were responsible for a portion of the delay. First, a representative from the City of Philadelphia testified that Cox received its instruction to proceed on the playground project on August 10, 1982, but work on the project did not actually commence until September 8, 1982 almost a month later. Record, Jan. 2, 1985, at 6–7. Further delay ensued when Fairfax attempted to stake out one of the playing fields and discovered that the measurements provided by Cox through the City did not correspond to the actual measurements of the playing field. See Record, Sept. 25, 1984, at 23; Oct. 19, 1984, at 63–64; Jan. 2, 1985, at 9. Yet further delay was attributable to the failure of Cox to provide a foreman on the site when the subcontractors were working. See Exhibit P–19A; record, Jan. 2, 1985, at 12–14. Finally, Stein testified to delays caused by other subcontractors who damaged some of Fairfax's work, damage which Fairfax had to repair. Record, Sept. 25, 1984, at 37–41.

Thus, the record amply supports the Bankruptcy Judge's finding that Fairfax was not the sole cause of delay on the playground project.

Cox's final two allegations of factual error on the part of the Bankruptcy Judge relate to its counterclaim. Cox argues that the court erred when it failed to find that Cox incurred and proved damages other than delay in completing Fairfax's work and failed to award Cox damages for extra costs as a result of Fairfax's poor workmanship. In effect, these are not separate claims: Cox is asking in two different ways for compensation for work it performed to correct deficiencies in Fairfax's work.

■ The Bankruptcy Judge did find that much of Fairfax's work was substandard, although it attributed part of the deficiency to Cox's instruction to pave under improper conditions. Opinion at 82. Cox did incur additional costs as a result of the "numerous flaws" in Fairfax's work. *Id.* But so

3. Braun also calculated Cox's delay damages to be $34,811.32. Record, Nov. 9, 1984, at 91.

4. There are three figures representing what appear to be damages on page 86 of the transcript

did Fairfax. Moreover, Fairfax sustained additional expenses when it performed additional work—at Cox's direction—that went beyond the terms of its contract with Cox. Unable to fix an exact dollar value on the two conflicting claims for additional expenses, the Bankruptcy Judge concluded that the expenses were approximately equal and refused to award damages to either party. *Id.* at 82–83.

The record reflects that the Bankruptcy Judge's conclusion is not clearly erroneous. Fairfax was unable to document its charges for the extra work it performed. Cox's efforts to prove its damages claim were also not successful. David Braun, Cox's estimator and project manager, testified that he was the recordkeeper for the project. Braun prepared a report showing the actual costs Cox incurred in completing Fairfax's work. According to Cox, the record reflects that Fairfax owes it $24,388.29 for this work. Brief of Appellant at 22.[3] Cox contends that Braun's testimony was undisputed and that the above sum is properly chargeable to Fairfax.

I first note that the above figure appears nowhere in Braun's testimony nor in his report. See Record, Nov. 9, 1984, at 84–87, 88–91; Exhibit D–8.[4] Moreover, on cross-examination Fairfax was able to call into question the accuracy of Braun's report. Braun at one point admitted that he had made an error in calculation:

Q. Correct me if I'm wrong, isn't that something you contend the Eichleay formula is designed to cover?

A. Well, these were two figures that were prepared separately. These were things that—okay, yes, I see your point.

.    .    .    .    .

THE COURT: Wait a minute. He not only sees your point, but doesn't that make your figures in error?

of the hearing of November 9, 1984, but these add up to $20,313.42, not the $24,388.29 which Cox claims is due and owing.

THE WITNESS: Yes, it would. The total amount for that particular page is $375.

Record, Nov. 9, 1984 at 94.

The record suggests that Braun prepared this report for Cox in anticipation of this litigation. Braun, as Cox's employee, was an interested witness. While the mistake that counsel for Fairfax caught was not grave in comparison to Cox's overall claim, such a mistake fairly raises the credibility of Braun as well as the accuracy of his report. As the trier of fact, the Bankruptcy Judge was entitled to disregard Braun's testimony. For this reason, his inability to affix a dollar value to Cox's claim for damages is not clearly erroneous.[5]

In addition to the above allegations of factual error, Cox also asserts that the Bankruptcy Judge committed two errors of law. Cox contends that the court erred in failing to apply appropriate construction law to the issue of delay damages and in its application of the doctrine of substantial performance.

■ Cox asserts that Fairfax was responsible for over 220 days worth of delay on the playground project and has requested damages based on the so-called Eichleay Formula. *See Eichleay Corp.*, ASBCA No. 5183, 60–2 BCA ¶ 2688 (1960) *aff'd on reconsideration*, 61–1 BCA ¶ 2894. However, the Eichleay Formula is applicable only when the individual against whom it is asserted was the *sole* reason for the delay. As noted earlier, there was sufficient evidence and testimony to support the Bankruptcy Court's finding that Fairfax was not solely responsible for the delay. Thus, the Bankruptcy Court correctly declined to apply the Eichleay Formula in this matter.

Cox relies on *First Mortgage Co. of Pennsylvania v. Carter*, 306 Pa.Super. 498, 452 A.2d 835 (1982) to support its contention that the Bankruptcy Judge erroneously applied the doctrine of substantial performance to the facts of this case. The

doctrine of substantial performance is intended to benefit

"those who have faithfully and honestly endeavored to perform their contracts in all material and substantial particulars, so that their right to compensation may not be forefeited by reason of mere technical, inadvertent or unimportant omissions or defects."

*First Mortgage Co. of Pennsylvania v. Carter*, 306 Pa.Super at 502, 452 A.2d at 837 (quoting *Morgan v. Gamble*, 230 Pa. 165, 175, 79 A. 410, 414 (1911).

■ The test for applying the doctrine depends on whether the breach of the defaulting party is material, that is, whether the breach goes to the essence of the contract. *Sgarlat v. Griffith*, 349 Pa. 42, 46, 36 A.2d 330, 332 (1944); *Schlein v. Gross*, 186 Pa.Super. 618, 625, 142 A.2d 329, 333 (1958); 3A A. Corbin, *Contracts*, § 700, at 308–10 (1960).

To determine whether a breach is material, the Pennsylvania courts have considered the following factors:

(a) the extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;

(b) the extent to which the injured party may be adequately compensated in damages for lack of complete performance;

(c) the extent to which the party failing to perform has already partly performed;

(d) the greater or less hardship on the party failing to perform in terminating the contract;

(e) the willful, negligent or innocent behavior of the party failing to perform. *Sgarlat v. Griffith*, 349 Pa. at 47, 36 A.2d at 332; *Schlein v. Gross*, 186 Pa.Super. at 625, 142 A.2d at 333. *See* Restatement (First) of Contracts § 275 (1932); *see also* Restatement (Second) of Contracts, § 241 (1981). Under Pennsylvania law, the question of whether the breach of contract was willful—the last factor—is of particular im-

---

**5.** Cox also seeks damages for moving and storing Fairfax's machinery. Braun did not testify as to the amount Cox paid to move and store the equipment, but his report reflects a cost of

$130.00 for removal. Exhibit D–8. The Bankruptcy Judge, however, does not appear to have credited Braun's calculations.

portance. *Schlein v. Gross*, 186 Pa.Super. at 625, 142 A.2d at 333.

■ My independent review of the record leads me to conclude that the Bankruptcy Judge did not err in his application of the doctrine of substantial performance to the facts of this case. Using the very figures that Cox submitted to the City of Philadelphia in support of its request for payment, the Bankruptcy Court found that Fairfax had "completed 81% of the work required under the contract, which we find was 'substantially all' of the work prescribed." Opinion, at 82; *see* Record, Oct. 19, 1984, at 51–56; Ex. P–1. Thus, the Bankruptcy Judge found that Cox had obtained the "substantial benefit which [it] could have reasonably anticipated" and Fairfax had "partly performed" the great majority of the contract. *Sgarlat v. Griffith*, 349 Pa. at 47, 36 A.2d at 332. The record supports these conclusions.

The testimony of William Cox, Jr., vice-president of Cox, indicated that Fairfax had completed all the contracted work except for certain restoration. *Id.* at 53. Although there was some dispute as to whether Fairfax could have completed this work before it left the job for the winter (see, Record, Sept. 25, 1984, at 48; Oct. 19, 1984, at 52), Cox received the substantial benefit it could reasonably anticipate. Fairfax performed nearly all that the contract required.

The doctrine of substantial performance is intended to avoid forfeiture on the part of a party who has breached a contract because of technical, inadvertent or unimportant omissions. *First Mortgage Co. of Pennsylvania v. Carter*, 306 Pa.Super. at 502, 452 A.2d at 837. In this case, the Bankruptcy Judge found that "[m]uch of [Fairfax's] work on the playground was below contract standards." Opinion, at 82.

Despite the flaws in Fairfax's performance, there is sufficient evidence to conclude that Fairfax fulfilled the essential purpose of the contract and that any of its omissions were technical, inadvertent, or unimportant. At one point Cox sent a termination notice to Fairfax, allegedly because of Fairfax's substandard performance. Exhibit P–19. However, Cox reinstated Fairfax on the job shortly thereafter. Record, Sept. 25, 1984 at 41–43; Nov. 9, 1984, at 60. Such evidence supports the inference that Cox was reasonably satisfied with Fairfax's work, thereby accepting the benefits of Fairfax's performance. *See First Mortgage Co. of Pennsylvania v. Carter*, 306 Pa.Super. at 503, 452 A.2d at 837. In addition, Fairfax showed that it was willing to cure any deficiencies in its work and attempted to do so. Record, Sept. 25, 1984, at 43–48.

Furthermore, the Bankruptcy Judge concluded that Cox was partly responsible for the deficiencies in Fairfax's work, which would excuse part of Fairfax' breach. The record supports this conclusion since Cox ordered Fairfax to pave under improper conditions. *See* Record, Sept. 25, 1984, at 33–37.

The Bankruptcy Judge concluded that Cox could "be adequately compensated in damages for lack of complete performance." *Sgarlat v. Griffith*, 349 Pa. at 47, 36 A.2d at 332. But the court offset the amount of damages for completing the work against the additional work Fairfax performed at Cox's direction that was not covered by the contract. I find no error in his doing so.

The Bankruptcy Court did not find that Fairfax's breach was willful. Although Fairfax left the job site on January 6, 1983, it intended to return to complete the job when weather conditions permitted. Record, Sept. 25, 1984, at 47–48. Moreover, the record reflects that Fairfax attempted to cure the deficiencies in its work. Record, Sept. 25, 1984, at 43–48.

Thus, Fairfax performed its work in good faith and performed substantially all of the work required. Cox received the substantial benefit of Fairfax's performance. Under these circumstances, it would be a hardship to force Fairfax to forfeit its rights to payment under the contract. *Sgarlat v. Griffith*, 349 Pa. at 47, 36 A.2d at 332. My plenary review, thus, indicates

that the Bankruptcy Court did not err in applying the doctrine of substantial performance to the facts of this case.[6]

The Bankruptcy Judge found that Fairfax was entitled to 81% of the contract price of $32,200.00, which works out to $26,082.00. As the court noted, Cox has already paid $15,000.00, so Cox still owes Fairfax $11,082.00. Accordingly, judgment was entered against Cox for that amount. That judgment is affirmed.

6. An alternative way to resolve this matter is to allow Fairfax to recover on the basis of *quantum meruit* rather than on the basis of substantial performance. The doctrine of substantial performance is clearer where the breaches of the performing party are trivial and innocent. In this case, the evidence does not suggest that Fairfax's deficient performance was material in relation to the project as a whole. However, recovery under *quantum meruit,* or quasi-contract, would be allowed even where a subcontractor does work that fails to constitute substantial performance—because deficiencies in performance are material—but which is nonetheless of value to the general contractor. Recovery is limited to the pro-rata contract price, less damages for the breach. *See generally,* 5 A. Corbin, *Contracts,* § 1109, at 583–84. In this case, the result turns out the same whether one employs *quantum meruit* or substantial performance: Fairfax would still be entitled to 81% of the contract price. Since the Bankruptcy Judge found Cox's damages for Fairfax's substandard performance to be essentially the same as Fairfax's claim for additional work it performed for Cox, the two countercharges offset each other.