**NET CONSTRUCTION, INC., Plaintiff,**

v.

**C & C REHAB AND CONSTRUCTION, INC., Defendant.**

**No. 99–CV–3371.**

United States District Court, E.D. Pennsylvania.

April 9, 2003.

Timothy R. Hough, Jaffee & Hough, Philadelphia, PA, for plaintiff.

Charles K. Graber, Richard M. Ochroch & Assoc. P.C., Philadelphia, PA, for defendant.

### *MEMORANDUM AND ORDER*

ANITA B. BRODY, District Judge.

## I.  Background

On July 1, 1999, Net, a Pennsylvania Corporation, commenced this action against C & C, a New Jersey Corporation. C & C served as the general contractor for the Chester Housing Authority during the construction of the William Penn Homes Project ("the project"). On or about February 3, 1997, Net and C & C entered into a written agreement; under the agreement, Net would perform concrete site work services and installations for the project on behalf of C & C. From February

3, 1997 through March 25, 1999, when C & C was removed from the project by a federally appointed receiver, Net performed installation of concrete site work services and installations pursuant to the parties' agreement and the instructions of C & C.

Under the Contract for Construction ("the contract") between Net and C & C, Net was required to submit to C & C billing requisitions or estimates at regular intervals for work performed by Net for C & C at the project site. Contract ¶ 10. The contract also required C & C to pay Net under each estimate within 60 days of the receipt of the requisitions without respect to the status of the Owner's payment to C & C. *Id.* All work performed by Net through December 31, 1998 has been accepted by the Owner or its representative.

This case has a complicated and lengthy procedural history. On September 8, 1999, a default was entered against C & C for failure to appear, plead, or otherwise defend Net's Complaint. On September 13, 1999, C & C submitted an Answer and affirmative defenses to Net's Complaint. On September 16, 1999, attorney Joseph S. Caruso ("Caruso") was admitted *pro hac vice* on the motion of attorney Saul Steinberg. C & C, acting through its counsel Caruso, submitted a brief on November 23, 1999 in support of its motion to vacate the entry of default and to dismiss Net's claims against it pursuant to Federal Rules of Civil Procedure 12(b)(4), (5), and (6). On March, 17, 2000, however, the court vacated its Order granting C & C's motion for Caruso to appear in this matter *pro hac vice* because it had come to the court's attention that Caruso had been convicted of conspiracy to commit bribery. C & C was granted leave to have substitute counsel enter an appearance by April 3, 2000.

On May 12, 2000, Net entered into a Settlement Agreement with Montbatten Surety Co. ("Montbatten"), which was C & C's bonding company, to settle Net's claims against Montbatten brought by Net in the Court of Common Pleas of Philadelphia County to recover on the payment withheld by C & C. Among other things, the Settlement Agreement provided that Montbatten would pay Net $207,000 of the amount due Net and owed by C & C for its contract balance, extra and additional work, and prejudgment interest. Settlement Agreement ¶ 2. Accordingly, Net released C & C from liability on Net's claims for the contract balance, extra and additional work, and Net's prejudgment interest thereon. *Id.* Significantly, however, "Net specifically reserve[d] the right to assert all other claims against C & C in the Federal Court Case or otherwise, including without limitation its claims for statutory penalty and legal fees, lost productivity, overhead and escalation." *Id.* at ¶ 5. Pursuant to the settlement, Net received payment from Montbatten on May 19, 2000.

Nine months later, by letter dated February 15, 2001 C & C's new counsel Steinberg, the same attorney who moved for Caruso's *pro hac vice* admission, informed the court that C & C had authorized him to withdraw both its motion to vacate default entry and its motion to dismiss. On February 16, 2001, therefore, the court denied as moot C & C's motions to vacate default entry and to dismiss Net's complaint.

Almost a year and a half later, on July 2, 2002, the court ordered Net to show cause why the case should not be dismissed unless Net filed a 'motion for default judgment on or before July 26, 2002. Net filed a motion for default judgment on July 26, 2002, and on August 14, 2002 the court ordered Net to file a detailed affidavit in

support of its motion for default judgment, itemizing the damages it seeks against C & C.

On August 26, 2002 C & C's third counsel in this action, Charles K. Graber ("Graber"), entered his appearance on behalf of C & C, and Steinberg withdrew his representation of C & C. On August 29, 2002, C & C, acting through its counsel Graber, moved to vacate the court's February 16, 2001 Order denying as moot C & C's motions to vacate default entry and to dismiss Net's claims. Also, C & C again moved to dismiss Net's claims under Federal Rule of Civil Procedure 12 on the basis of a forum selection clause in the contract.[1] Contract ¶ 15.

On October 8, 2002, I denied C & C's motion to vacate the Order of February 16, 2001 as well as C & C's motion to dismiss Net's complaint. *Net Const., Inc. v. C & C Rehab & Const., Inc.*, No. 99–CV–3371, 2002 WL 31268385, at *1, (E.D.Pa. October 8, 2002). On October 23–24, 2002, I held a default judgment hearing (the "hearing") pursuant to Fed.R.Civ.P. 55(b)(2) to determine the amount of damages suffered by Net as a result of C & C's breach of the contract.

Net did not rely on an independent expert at the damages hearing. Instead, Net's only witness was its President Mr. Christopher J. Colletti ("Colletti"). The project proceeded in two "phases" ("Phase I" and "Phase II"), each of which involved work on ten to twelve homes that were basically identical. (N.T. 10/23/02 (Colletti) at 6). As the concrete site work contractor, Net performed two kinds of work on the project. *Id.* The first involved

work directly related to the construction of the buildings, and involved pouring concrete "footers" and "base slabs." *Id.* at 8. Net also performed miscellaneous sitework, including the construction of curbs and sidewalks.

Colletti testified that work on phase I was supposed to be completed in July of 1997, but it did not end until April of 1998. (N.T. 10/23/02 (Colletti) at 45). Colletti testified that Net lost $103,188 on Phase I of the project. *Id.* at 24. The whole project, including the completion of phase II was supposed to end in April of 1998, but the project was not complete until April of 1999. Colletti testified that Net lost $139,000 on Phase II. *Id.* at 56.

Colletti attributed the delay in finishing the project primarily to C & C's poor management especially during of Phase I of the project. For example, Colletti testified that C & C had installed a fence around the project that made it difficult to gain easy access to the construction site. In order for its crews to access the worksite easily, Net had to move the fence at the beginning of the workday and put it back up at the end of the workday. *Id.* at 25. Colletti also acknowledged, however, that there were other problems with the construction site that led to delay, including the existence of asbestos at the site, unsuitable soils, and weather related issues. *Id.* at 80, 97. Furthermore, Net itself contributed to the delay of the project's completion because Net experienced problems with its concrete supplier and with pouring a floor. *Id.* at 85.

Because of the delay in finishing the project, Colletti testified that Net lost

---

1. The forum selection clause provides that:

    If any claims or disputes arise under the Subcontract regarding Scope of Work, resolution of same shall be governed by the Contract documents between Contractor and Owner. If the contract between the Contractor and Owner does not specify a forum for dispute resolution. [sic]. All claims and/or disputes shall be brought in Philadelphia Court of Common Pleas.
    Contract ¶ 15.

money on the construction of the project because Net's cost of performing the concrete work exceeded the price it bid to win the contract to perform the work. In its affidavit of itemized damages, Net claims that it is entitled to the following consequential damages:

| | |
|---|---|
| Lost Productivity | $234,152.19 |
| Extended Home Office Overhead | $ 61,493.00 |
| Wage Escalation | $ 9,270.66 |
| Attorney's Fees | $ 13,768.73 |
| Interest | $ 23,830.71 (to May 19, 2000) |
| Statutory Penalty (73 P.S. § 501) | $ 40,851.00 (to May 19, 2000). |

Thus, Net claims a total of $383,366.29 in consequential damages as a result of C & C's breach of its contract with Net.[2]

## II. Jurisdiction

Jurisdiction is based on diversity of citizenship.[3] *See* 28 U.S.C. § 1332.

## III. Discussion

■ A consequence of an entry of default judgment is that " 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.' " *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142 (3d Cir.1990) (quoting 10 C. Wright, A. Miller, & Kane, *Federal Practice and Procedure*, § 2688 at 444 (2d ed. 1983)). If the damages are not for a "sum certain or for a sum which can by computation be made certain," Fed. R.Civ.P. 55(b)(1), a district court "may conduct such hearings or order such references as it deems necessary and proper." Fed.R.Civ.P. 55(b)(2). Once a default is entered, assuming the damages are not for a sum certain or a sum that can be made certain, a district court must still assess the amount of damages suffered by the plaintiff. *See id.; Whelan v. A. Ward*

*Enter. Inc.*, No. Civ. A. 01–2874, 2002 WL 1745614, *1 (E.D.Pa. July 23, 2002) (requiring plaintiff to prove damages after default judgment against the defendant).

### A. Lost Productivity, Wage Escalation, Extended Home Office Overhead

■ A claim of lost productivity is a claim arising out of a delay of a construction project that causes a contractor to alter its method of performance so as to proceed in a less productive manner; the contractor may claim its inefficiency as a delay damage. *See Luria Bros. & Co., Inc. v. United States*, 177 Ct.Cl. 676, 369 F.2d 701 (1966). Net bears the burden of demonstrating a reasonable allocation of its increased costs as a result of delays of the construction project caused by C & C. *See Lichter v. Mellon–Stuart Co.*, 305 F.2d 216, 219 (3d Cir.1962) (applying Pennsylvania law); *Jet–Blast Hydrodemolition Canada, Inc. v. Joseph Paolino & Sons, Inc.*, No. Civ. A. 92–752, 1993 WL 29163, *1, 6 (E.D.Pa. Feb. 3, 1993). In *Lichter*, the Court of Appeals for the Third Circuit ruled that the plaintiff subcontractor faced an "insurmountable obstacle to recovery"

---

**2.** Net cannot recover on the total contract balance because it released C & C from liability on that claim in its settlement agreement with Montbatten.

**3.** When a federal district court exercises diversity jurisdiction, it must apply the substantive law as decided by the highest court of the state whose law governs the action. *See Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1373 n. 15 (3d Cir.1996). Where the state's highest court has not interpreted a statute, a federal court must predict how that court would interpret and apply the statute. *Id.*

on its "total cost" claim because it failed to allocate its additional costs between actionable and non-actionable causes. *Id.* at 219. In denying the plaintiff subcontractor recovery, the Third Circuit stated:

> Even if one could find from the evidence that one or more of the interfering contingencies was a wrongful act on the part of the defendant, no basis appears for even an educated guess as to the increased costs suffered by plaintiffs due to that particular breach or breaches as distinguished from those causes which defendant is contractually exempt from responding in damages.

*Lichter,* 305 F.2d at 219.

■ Under the "total cost" method, a contractor's damages is the difference between a contractor's actual costs and its original bid.[4] *See Phillips Constr. Co. v. United States,* 184 Ct.Cl. 249, 394 F.2d 834 (1968). The total cost method is strongly disfavored by courts. *See Lichter* 305 F.2d at 219; *see also Boyajian v. United States,* 191 Ct.Cl. 233, 423 F.2d 1231 (1970); *Great Lakes Dredge & Dock Co. v. United States,* 119 Ct.Cl. 504, 559, 96 F.Supp. 923 (1951), *cert. denied,* 342 U.S. 953, 72 S.Ct. 624, 96 L.Ed. 708 (1952). Also, "[i]t is a rare case where loss of productivity can be proven by books and records; almost always it has to be proven by the opinions of expert witnesses." *Aetna Casualty and Sur. Co. v. George Hyman Constr. Co.,* 1998 U.S. Dist. LEXIS 22627, at *262, (E.D.Pa. May 15, 1998).

■ Net fails to establish a reasonable allocation of its extra costs as a result of particular delays caused by C & C. While Net established that there were delays in completing the construction project, it failed to demonstrate that its damages for lost productivity were the result of delays for which C & C was responsible. After two days of testimony and briefing on the damages issues in this case, "no basis appears for even an educated guess" as to the increased costs suffered by Net as a result of delays for which C & C was responsible. Net failed to distinguish losses suffered as a result of delays by C & C from losses that it might have suffered because of Net's own performance problems, weather, unsuitable soils, or the existence of asbestos at the site. There is simply no basis on which to conclude that Net's losses were the result of delays caused by C & C. Accordingly, Net is not entitled to recover damages on its claim of lost productivity.

**B. Extended Home Office Overhead**

■ A claim of "extended home office overhead" is a claim for general and administrative overhead expenses that continue to be incurred during the period of a construction delay after the project's scheduled completion. When a construction project is delayed, the contractor's indirect costs, such as home office expenses, often accrue beyond the amount originally allocated to that particular contract; thus these additional indirect costs may be "unabsorbed." *See West v. All State Boiler, Inc.,* 146 F.3d 1368, 1372 (Fed.Cir.1998). In addition to direct costs that result from a delay of a construction project, a contractor may recover any unabsorbed, indirect costs that result from the delay. *See id.* The "Eichleay formula" is the appropriate method for calculating extended home office overhead.[5] *See*

---

4. Net relies on the total cost method of proving damages. (N.T. 10/23/02 (Colletti) at 47–62).

5. In *Eichleay,* the Armed Services Board of Contract Appeals adopted a specific formula for estimating proportionate home office overhead that may be unabsorbed due to a delay:

*Eichleay Corp.,* ASBCA No. 5183, 60–2 BCA ¶ 2688, 1960 WL 538 (1960) *aff'd on reconsideration,* 61–1 B.C.A ¶ 2894, 1960 WL 684; *see also Charles G. Williams Constr. Inc. v. White,* 271 F.3d 1055 (Fed. Cir.2001); *Stein v. William C. Cox,* 57 B.R. 1016, 1021 (E.D.Pa.1986). "[T]he Eichleay formula is applicable only when the individual against whom it is asserted was the *sole* reason for the delay." *Stein,* 57 B.R. at 1021.

■ As with its other claims, Net fails to establish that its extended home office overhead costs resulted from delays caused by C & C. There is no evidence that actions or inactions of C & C were the "sole" reason for the delay of the project. Thus, Net cannot recover on its claim of extended home office overhead.

#### C. Wage Escalation

■ A claim of "wage escalation" is a claim to recover increased costs in the form of higher labor rates that a contractor is forced to pay as a result of a delay in a construction project. *See U.S. Steel Corp. v. Missouri Pacific Railroad Co.,* 668 F.2d 435, 441 (8th Cir.1982). Net cannot recover on its wage escalation claim

because it fails to allocate its increased labor costs to delays caused by C & C. *See Lichter,* 305 F.2d at 219.[6]

#### D. Statutory Penalty and Attorney's Fees Under 73 P.S. § 501

When Net filed this action in this court on July 1, 1999, it claimed damages for, among other things, an unpaid contract balance of $237,447.64 under Pennsylvania's Contractor and Subcontractor Payment Act, 73 Pa. Cons.Stat. § 501 *et. seq.* (the "CSPA"). The purpose of the CSPA is to provide protection to contractors. *Nippes v. Lucas,* 815 A.2d 648, 651 (Pa.Super.2003). A party may proceed under the CSPA to recover amounts "wrongfully withheld" by a contractor and, if successful, may also recover a statutory penalty and attorney's fees. 73 Pa. Cons.Stat. §§ 504, 507(a), 512.[7] Section 512 of the CSPA provides:

(a) **Penalty for failure to comply with act.**—If arbitration or litigation is commenced to recover payment under this act and it is determined that an owner, contractor or subcontractor has failed to comply with the payment terms of this

---

Appellant has based its claim on an allocation of the total recorded main office expense to the contract in the ratio of contract billings to total billings for the period of performance. The resulting determination of a contract allocation is divided into a daily rate, which is multiplied by the number of days of delay to arrive at the amount of the claim. This method of computation relies primarily on the duration of the suspension as the criterion for allocating the contract expenses of the main office. *Eichleay Corp.,* ASBCA No. 5183, 60–2 B.C.A. (CCH) ¶ 2688, 13,574 (1960). Net employs the Eichleay formula in calculating its damages for extended home office overhead. (N.T. 10/23/02 (Colletti) at 74–76); Pl.'s Affidavit of Itemized Damages Exh. B.

6. Because Net cannot recover on its claims of lost productivity, wage escalation, or home

office overhead, it also cannot recover interest or attorney's fees relating to these claims.

7. Section 504 provides: "[P]erformance by a contractor or subcontractor in accordance with the provisions of a contract shall entitle the contractor or subcontractor to payment from the party with whom the contractor or subcontractor has contracted." § 504. There is no dispute that Net performed on the contract.

 Section 507 provides in relevant part: "[p]erformance by a subcontractor in accordance with the provisions of the contract shall entitle the subcontractor to payment from the party with whom the subcontractor has contracted." § 507(a). By performing on the contract, Net was entitled to payment from C & C.

act, the arbitrator or court shall award, in addition to other damages due, a penalty equal to 1% per month of the amount that was wrongfully withheld. An amount shall not be deemed to be wrongfully withheld to the extent it bears a reasonable relation to the value of any claim held in good faith by the owner, contractor or subcontractor against whom the contractor or subcontractor is seeking to recover payment. **(b) Award of Attorney Fee and Expenses.**—Notwithstanding any agreement to the contrary, the substantially prevailing party in any proceeding to recover payment under this act shall be awarded a reasonable attorney fee in an amount to be determined by the court or arbitrator, together with expenses.

73 Pa. Cons.Stat. § 512(a)-(b).[8] If a party initiates litigation or arbitration to recover payment under the CSPA that party may also recover a penalty and attorney's fees from the owner, contractor, or subcontractor that wrongfully withheld the payment.[9]

Net settled its claim for the total contract balance with Montbatten for $207,000 on May 12, 2000. In its settlement agreement with Montbatten, however, Net "specifically reserve[d] the right to assert all other claims against C & C in the Federal Court Case or otherwise, including without limitation its claims for statutory penalty and legal fees, lost·productivity, overhead and escalation." Net does not seek recovery on the contract balance under the CSPA. *See* 73 Pa. Cons.Stat. §§ 505–507. Rather, Net now claims that C & C must pay Net a penalty under section 512(a) equal to 1% per month of the amount that C & C wrongfully withheld from Net as well as attorney's fees under section 512(b).

Under the plain language of section 512(a), before imposing a penalty on C & C for failing to pay Net, I must determine that (1) Net commenced arbitration or litigation to recover payment from C & C under the CAPA; (2) C & C "failed to comply with the payment terms of the act," and thus wrongfully withheld payment from Net; and (3) the amount deemed to be wrongfully withheld does not bear a reasonable relation to the value of any claim withheld by C & C in good faith. *See id.*

Net "commenced arbitration or litigation" within the meaning of the CAPA in this court on July 1, 1999. It does not matter that Net ultimately recovered the

---

**8.** The Pennsylvania Supreme Court has not interpreted the CSPA. Therefore, I must predict how the Pennsylvania Supreme Court would interpret and apply section 512(a). *See Orson*, 79 F.3d at 1373 n. 15. Under Pennsylvania's law of statutory construction, a statute's plain meaning must prevail. *See id.* at 1374 (citing *Retenauer v. Flaherty*, 164 Pa. Commw. 182, 191, 642 A.2d 587, 591 (1994)). Any word or phrase that is not otherwise defined must be construed according to the rules of grammar and according to the common and approved usage. *See Martin Media v. Commonwealth*, 661 A.2d 479, 481 n. 22 (Pa.Commw.1995). The letter of the statute must not be disregarded in the name of promoting the spirit of the act. *See Orson*, 79 F.3d at 1373 n. 15. A court should give effect to all of the sections of an act rather than interpreting the language in a way that makes one section superfluous or meaningless. *See Key Savings & Loan Ass'n v. Louis John, Inc.*, 379 Pa.Super. 226, 232, 549 A.2d 988, 991 (1988).

**9.** A "contractor" means "a person authorized or engaged by an owner to improve real property." § 502. There is no dispute that C & C is a contractor within the meaning of the CSPA. A "subcontractor" is "[a] person who has contracted to furnish labor or materials to, or has performed labor for, a contractor or another subcontractor in connection with a contract to improve real property." *Id.* Net is a subcontractor within the meaning of section 502.

contract balance as a result of a settlement with Montbatten arising out of Net's action against Montbatten in the Philadelphia Court of Common Pleas. According to the plain language of section 512(a), all that matters is that Net did, in fact, commence arbitration or litigation to recover payment under the act from C & C.

The settlement agreement between Net and Montbatten establishes that C & C "failed to comply with the payment terms" of the CAPA, and thus wrongfully withheld payment from Net. The settlement agreement between Net and Montbatten "reflects the parties' compromise and agreement as to the aggregate amount due Net for its contract balance, extra and additional work, and pre-judgment interest." Settlement at ¶ 2. The terms of the settlement agreement between Net and Montbatten reflect C & C's failure to comply with the payment terms of its contract with Net. In view of the settlement, C & C failed to comply with the payment terms of the CAPA because it wrongfully withheld payment of $207,000 owed to Net. Also, there is no evidence that C & C withheld the amount due Net in good faith. Accordingly, Net is entitled to a penalty equal to 1% per month of the $207,000 that C & C wrongfully withheld from Net.[10]

Net also seeks attorney's fees and expenses under section 512(b) of the CSPA which provides that "a substantially prevailing party in any proceeding to recover payment" under the CAPA "shall be awarded a reasonable attorney fee in an amount to be determined by the court or arbitrator, together with expenses." § 512(b). Net is a "substantially prevailing party" within the meaning of section 512(b). *See Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) ("Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit."); *see also American Canoe Ass'n v. United States Envtl. Protection Agency,* 138 F.Supp.2d 722, 732 (E.D.Va.2001) (concluding that the plaintiffs were entitled to attorney's fees as a "substantially prevailing party" within the meaning of the Clean Water Act because the settlement "modifies the defendant's behavior in a way that directly benefits the plaintiffs"); *Earth Island Institute, Inc. v. Southern California Edison Co.,* 92 F.Supp.2d 1060 (S.D.Ca.2000) (same); *Atlantic States Legal Found., Inc. v. Eastman Kodak Co.,* 933 F.2d 124, 127–28 (2d Cir.1991) (same). In its settlement with Montbatten to recover the payment wrongfully withheld by C & C, Net succeeded on significant issues that entitled it to a financial benefit of $207,000. Thus, Net is entitled to a "reasonable attorney fee in an amount to be determined by the court ... together with expenses." § 512(b). The parties shall submit briefs concerning the attorney's fees and expenses they believe are "reasonable" for Net to collect as a result of this litigation.[11]

---

**10.** Net calculates a penalty equal to 1% of the total contract balance ($240,310.19) per month "from January 1999 to May 21, 2000." Pl's Findings of Fact and Conclusions of Law at ¶ 31. There are a few problems with Net's calculation of the amount of the penalty. First, the dates are inconsistent with the dates provided by Net in its Affidavit of Itemized Damages in which Net uses a date of May 19, 2000. Second, the January 1999 date is too imprecise to determine the exact amount of

the penalty. The most significant problem with Net's calculation of the penalty, however, is that, as the settlement agreement between Net and Montbatten makes clear, the amount wrongfully withheld from Net by C & C was $207,000.

**11.** In its Affidavit of Itemized Damages, Net states that it is entitled to $23,830.71 in interest for 17 months at 7% per year on the total contract amount ($240,310.19) pursuant to 73

### ORDER

**AND NOW,** this 9th day of April 2003 it is **ORDERED** that Net's motion for assessment of damages upon default judgment (Docket Entry # 17) is **GRANTED IN PART AND DENIED IN PART.** Net is **GRANTED** a statutory penalty and attorney's fees under 73 Pa. Cons.Stat. § 512(a)-(b) and **DENIED** recovery on its claims of lost productivity, extended home office overhead and wage escalation.

By April 18, 2003, the parties shall meet in an effort to agree on the amount of the statutory penalty and attorney's fees and expenses, assuming that such damages are proper, and communicate this amount to me by fax, (215)–580–2356. If the parties cannot reach agreement on the amounts of the statutory penalty and attorney's fees and expenses, the parties shall each submit a one-page letter brief regarding the amounts of the statutory penalty and attorney's fees and expenses by April 25, 2003.

Pa. Cons.Stat. § 1621 *et. seq.* Net's Complaint did not state a claim under § 1621. Furthermore, Net does not provide any authority to support its claim that it is entitled to such a payment. Thus, Net is not entitled to recover under § 1621.