J-S08013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| BETTE ANN PUHARIC AND MARK PUHARIC | : | |
| | : | |
| Appellees | : | No. 955 WDA 2016 |

Appeal from the Order Entered June 2, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s):  GD06-29346

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and SOLANO, J.

MEMORANDUM BY GANTMAN, P.J.:           **FILED JANUARY 30, 2018**

Appellant, Wells Fargo Bank, N.A. ("Bank"), appeals from the order entered in the Allegheny County Court of Common Pleas, which granted the petition of Appellees, Bette Ann Puharic and Mark Puharic, to enforce the parties' Settlement Agreement.  We affirm.

The relevant facts and procedural history of this case are as follows. On or about October 1, 1995, Appellees applied for a line of credit from Bank.  Bank issued Appellees a line of credit for $50,000.00 with an interest rate of 17.50%.  On December 7, 2006, Bank filed a complaint against Appellees, alleging they were in default on their account and had not made any payment since October 24, 2005.  Bank sought judgment in the amount of $74,197.65, plus *per diem* interest.

At a judicial conciliation held on September 2, 2015, the parties

reached a settlement.  The Settlement Agreement provides, in relevant part:

THIS SETTLEMENT AGREEMENT is made this 2nd day of September, 2015 by and between [Bank] and [Appellees], by their respective counsel on their behalf.

WHEREAS, [Bank] instituted the above-referenced suit against [Appellees] seeking recovery of $74,197.65 plus *per diem* interest for monies loaned by [Bank] to [Appellees] (the "Judgment Amount").

WHEREAS, a pretrial conference is scheduled for September 2, 2015 and trial is scheduled for September 21, 2015.

WHEREAS, to avoid the uncertainties of litigation, the parties hereto desire to settle this matter on the terms and conditions hereinafter stated.

NOW, THEREFORE, the parties hereto, intending to be legally bound hereby, agree as follows:

1. [Bank] agrees to accept $22,000 in full and final satisfaction of its claim, provided that (a) $5,500 is paid no later than September 10, 2015, and (b) $16,500 is paid within 90 days of the date hereof.

2. In the event that [Appellees] fail to timely make either of the two payments referenced in paragraph 1 above, then [Appellees] consent to the entry of judgment against them in the amount of the Judgment Amount, less such amounts as are paid by [Appellees] to [Bank] hereafter. For said purposes, [Appellees] agree that there are no defenses, offsets or counterclaims with respect to said indebtedness.

\* \* \*

6. The terms of this Stipulation shall be binding upon and inure to the benefit of [Bank] and [Appellees], their heirs, executors, successors, **and** assigns.

7. This Stipulation constitutes the entire agreement between [Bank] and [Appellees].  No changes, alterations,

> or amendments are valid except upon written agreement of [Bank] and [Appellees], **their attorneys**, heirs, executors, successors, **or** assigns.
>
> \* \* \*

(Settlement Agreement, filed 9/8/15, at 1-3; R.R. at 11-13) (emphasis added). Appellees timely paid the initial $5,500.00 on September 9, 2015, but they did not make the second payment of $16,500.00 by the agreed-upon date of December 2, 2015.

On January 25, 2016, Bank's counsel contacted Appellees' counsel about the overdue payment. Specifically, Bank's counsel stated: "The remaining $16,500 due under our [S]ettlement [A]greement was due by December 2, 2015, but it has not been received. As you know, the effect of a default would be to allow us to enter judgment in the full amount of the debt. Please advise as to the status of this payment. All rights are reserved." (Petition to Enforce Settlement Agreement, filed 2/1/16, at Exhibit B-7; R.R. at 29).

Appellees' counsel responded that he would contact Appellees "ASAP" and thanked Bank's counsel for the courtesy. (*Id.*) About one half-hour later, Appellees' counsel replied to Bank's counsel stating Appellees could pay the $16,500.00 by Thursday or Friday of that week by check or wire transfer. Appellees' counsel inquired: "Please advise if this is acceptable, and that receipt of the payment will result in the satisfaction being filed." (*Id.* at Exhibit B-6; R.R. at 28).

On Thursday, January 28, 2016, Appellees' counsel reached out to Bank's counsel again, confirming that Appellees could pay the $16,500.00 the next day, Friday, January 29, 2016. Appellees' counsel asked if Bank's counsel had heard back from Bank yet about whether the "deal [was] still on." (*Id.* at Exhibit B-4; B-5; R.R. at 26-27). Bank's counsel replied that Bank had "told [him the deal is] still in place if the money can be wired by tomorrow. I can give you wiring instructions." (*Id.* at Exhibit B-3; R.R. at 25). Bank's counsel subsequently provided wiring instructions for counsel's IOLTA account. (*Id.* at Exhibit B-2; R.R. at 24). Appellees paid the $16,500.00 due *via* wire transfer on Friday, January 29, 2016, as agreed.

On Monday, February 1, 2016, Bank's counsel contacted Appellees' counsel by phone and e-mail to explain that Bank's counsel had "made an error when [he] indicated that [Bank] was prepared to accept the late payment [and] got this mixed up with another matter." (*Id.* at Exhibit C; R.R. at 30). Appellees' counsel replied that Appellees had "obviously relied on the representation that the late payment would be accepted as payment in full." (*Id.*) On February 4, 2016, Bank's counsel sent Appellees' counsel a check made payable to Appellees for $16,500.00 and a letter stating: "I am returning the $16,500 check made payable to your client. It was not timely paid. As I noted earlier, my email was in error." (*Id.* at Exhibit D; R.R. at 31). To date, Appellees have not cashed the check.

On February 16, 2016, Appellees filed a petition to enforce paragraph

1 of the Settlement Agreement. Bank filed an answer on February 17, 2016, to Appellees' petition to enforce the Settlement Agreement. In their brief in opposition, Bank included an affidavit from Amanda Layton, Bank's loan adjuster, which stated, *inter alia*, she had not received the e-mail string between Bank's counsel and Appellees' counsel until March 24, 2016. Ms. Layton explained how Bank's counsel had attempted to forward the e-mail string to her at the time of the e-mails but had inadvertently forwarded the e-mails to the incorrect e-mail address. Ms. Layton further explained she had had a brief conversation with Bank's counsel on January 25, 2016, regarding Appellees' overdue payment. On February 1, 2016, Ms. Layton e-mailed Bank's counsel, stating: "go ahead and enter the default judgment for an amount of $62,375.25 and record abstracts." (Bank's Brief in Opposition to Appellees' Petition to Enforce, filed 5/31/16, at 4; R.R. at 50). Ms. Layton certified that she had not ever authorized Bank's counsel to accept the $16,500.00 as full satisfaction, after Appellees had defaulted under the Settlement Agreement, and was unaware of the ongoing discussions between Bank's counsel and Appellees' counsel or their agreement to extend the payment date.

Following oral argument, the court entered an order on June 2, 2016, directing Bank to accept the $16,500.00 as payment in full and ordering the Department of Court Records to mark the matter as settled and discontinued. On June 8, 2016, Appellees filed a *praecipe* to mark the case

as settled and discontinued. Bank filed a motion for reconsideration on June 17, 2016. Bank timely filed a notice of appeal on June 27, 2016, and a *praecipe* to withdraw the motion for reconsideration on July 18, 2016. The court did not order Bank to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Bank filed none.

Bank raises the following issues on appeal:

> DID THE TRIAL COURT ERR WHEN IT GRANTED [APPELLEES'] PETITION TO ENFORCE AGREEMENT BECAUSE THE RULING OF THIS TRIAL COURT DIRECTLY CONFLICTS WITH THE SUPREME COURT OF PENNSYLVANIA HOLDING IN *REUTZEL V. DOUGLAS*, [582 PA. 149, 870 A.2d 787 (2005)] WHICH PROVIDES AN ATTORNEY IS NOT AUTHORIZED TO ENTER INTO SETTLEMENT AGREEMENTS WITHOUT THE EXPRESS AUTHORITY OF THE CLIENT, ESPECIALLY WHERE THE CLIENT DID NOT EVEN HAVE KNOWLEDGE OF THE PROPOSED SETTLEMENT AGREEMENT?
>
> IF A LENDER HAS A RIGHT TO ENTER JUDGMENT AGAINST A BORROWER BASED ON THE FAILURE TO MAKE A TIMELY PAYMENT, IS THE BORROWER PERMITTED TO TENDER AN UNTIMELY PAYMENT TO THE LENDER, SO LONG AS THE BORROWER TENDERS THE PAYMENT BEFORE THE LENDER HAS ENTERED JUDGMENT (*I.E.*, BEATS LENDER TO THE PUNCH) UNDER THE DOCTRINES OF EITHER SUBSTANTIAL PERFORMANCE OR WAIVER?

(Bank's Brief at 4).

Review of a trial court's decision to enforce a settlement agreement involves the following principles:

> The enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent

- 6 -

necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision. With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record.

The law of this Commonwealth establishes that an agreement to settle legal disputes between parties is favored. There is a strong judicial policy in favor of voluntarily settling lawsuits because it reduces the burden on the courts and expedites the transfer of money into the hands of a complainant. If courts were called on to reevaluate settlement agreements, the judicial policies favoring settlements would be deemed useless. Settlement agreements are enforced according to principles of contract law. There is an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed upon sum).

Where a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement. This is true even if the terms of the agreement are not yet formalized in writing. Pursuant to well-settled Pennsylvania law, oral agreements to settle are enforceable without a writing. An offeree's power to accept is terminated by (1) a counter-offer by the offeree; (2) a lapse of time; (3) a revocation by the offeror; or (4) death or incapacity of either party. However, once the offeree has exercised his power to create a contract by accepting the offer, a purported revocation is ineffective as such.

*Step Plan Services, Inc. v. Koresko*, 12 A.3d 401, 408-409 (Pa.Super. 2010). *See also Salsman v. Brown*, 51 A.3d 892, 893-94 (Pa.Super. 2012) (quoting *Bennett v. Juzelenos*, 791 A.2d 403, 406 (Pa.Super. 2002)) (reiterating relevant standard and scope of review).

For purposes of disposition, we combine Bank's issues. Bank argues

its counsel agreed to a late payment under the Settlement Agreement between Bank and Appellees, without Bank's consent. Bank claims its attorney had to have Bank's express authority to bind Bank to an extension of the payment deadline. Bank claims its counsel mistakenly agreed to accept the late payment because counsel confused this case with another matter. Bank highlights Ms. Layton's affidavit stating how she instructed Bank's counsel to enter a default judgment for the full judgment amount ($74,197.65), less Appellees' payment of $5,500.00 already made under the Settlement Agreement. Bank maintains it was completely unaware of any conversations between its counsel and Appellees' counsel to accept the late payment, because Bank's counsel had inadvertently forwarded the e-mail string to the incorrect e-mail address. Bank also suggests Appellees could not have "substantially performed" under the original Settlement Agreement, absent Bank's express assent to extend the payment deadline. Bank contends it did not waive its right to enforce paragraph 2 of the Settlement Agreement simply because Bank failed to seek a default judgment against Appellees immediately after Appellees missed the December 2, 2015 due date. Instead, Bank insists the law presumes "time is of the essence," where the contract sets forth specific dates, so the lack of a "time is of the essence" clause in the original Settlement Agreement affords Appellees no relief. Bank concludes the trial court erred when it granted Appellees' petition to enforce the Settlement Agreement, despite the

"unauthorized" late payment; and this Court must reverse and remand for further proceedings. We disagree.

As a general rule, counsel must have express authority from the client to settle a case. **Reutzel, supra** at 154, 870 A.2d at 789-90 (citing **Rizzo v. Haines**, 520 Pa. 484, 500-01, 555 A.2d 58, 66 (1989)). "The rationale for this rule stems from the fact that parties settling legal disputes forfeit substantial legal rights, and such rights should only be forfeited knowingly." **Reutzel, supra** at 154, 870 A.2d at 790 (stating attorney must have express authority from client to settle client's case; reversing this Court's use of "apparent authority" as basis to enforce settlement, particularly where counsel had stated during negotiations that he did not have his clients' consent to settle; limiting use of "apparent authority" in **Rothman v. Fillette**, 503 Pa. 259, 469 A.2d 543 (1983) to similar facts, under those principles of equity and agency which drove **Rothman**[1] conclusion, *i.e.*, client's counsel's fraud and unlawful conduct). Where an attorney purports to settle a case without his client's express consent, courts will look to

---

[1] **Rothman** involved a situation where Mr. Rothman's attorney settled Mr. Rothman's case with the Fillettes' insurance company by forging Mr. Rothman's signature and then the attorney pocketed the settlement proceeds. The **Rothman** Court reasoned that, as between Mr. Rothman and the innocent insurance company, Mr. Rothman should bear the loss because he had hired the fraudulent attorney, put him in a position of trust and confidence, and enabled him to perpetrate the wrongdoing. **Rothman** was a peculiar case that did not override the general rule on express authority to settle a case.

"principles of equity and agency" to decide if counsel's unauthorized actions should bind his client to the alleged settlement. *See Reutzel, supra* at 158, 870 A.2d at 792 (holding same principles of equity and agency underlying *Rothman* did not apply in this case to bind plaintiffs to terms of alleged settlement of their case, where facts and equities of these cases were distinguishable).

Nevertheless, an attorney has the authority to do acts, which are incidental to a transaction, usually accompany it, or are reasonably necessary to accomplish it. *See generally Starling v. West Erie Avenue Building & Loan Ass'n*, 333 Pa. 124, 3 A.2d 387 (1939). *See also Pennsylvania R. Co. v. City of Pittsburgh*, 335 Pa. 449, 456, 6 A.2d 907, 912 (1939) (explaining attorney has power to bind his client to acts in management of regular course of litigation).

"Both at law and in equity, forfeitures are strongly disfavored and strictly construed." *Liazis v. Kosta, Inc.*, 618 A.2d 450, 455 (Pa.Super. 1992), *appeal denied*, 536 Pa. 630, 637 A.2d 290 (1993). "Our court seeks to avoid forfeitures particularly where there has been considerable part performance." *Id.* Courts developed the equitable doctrine of substantial performance to do justice and avoid imposition of a forfeiture on those who have honestly tried to perform their contracts. *First Mortg. Co. of Pa. v. Carter*, 452 A.2d 835, 837 (Pa.Super. 1982).

> We must weigh the purpose to be served, the desire to be gratified, the excuse for deviation from the letter, the

> cruelty of enforced adherence. Then only can we tell whether literal fulfillment is to be implied by law as a condition. This is not to say that the parties are not free by apt and certain words to effectuate a purpose that performance of every term shall be a condition of recovery. That question is not here. This is merely to say that the law will be slow to impute the purpose, in the silence of the parties, where the significance of the default is grieviously out of proportion to the oppression of the forfeiture.

*Id.* (internal quotation marks and citations omitted). *See also Atlantic LB, Inc. v. Vrbicek*, 905 A.2d 552 (Pa.Super. 2006) (applying doctrine of substantial performance in favor of tenants in commercial lease dispute).

Instantly, Bank and Appellees entered into a Settlement Agreement to resolve their dispute over an outstanding line of credit Appellees had with Bank. Pursuant to the Settlement Agreement, Appellees timely made their first installment payment. When Bank's counsel contacted Appellees' counsel on Monday, January 25, 2016, about the overdue second payment, Appellees authorized their counsel to promise payment in full by check or wire transfer before the end of that week. During that week, Appellees' counsel again contacted Bank's counsel to confirm Appellees' second payment and asked if Bank's counsel had heard back from Bank yet about whether the "deal [was] still on." Bank's counsel replied that Bank had "told [him the deal is] still in place if the money can be wired by tomorrow [Friday]. I can give you wiring instructions." Bank's counsel subsequently provided wiring instructions for his IOLTA account. Appellees paid the balance of $16,500.00 *via* wire transfer on Friday, January 29, 2016.

On Monday, February 1, 2016, Bank's counsel contacted Appellees' counsel by phone and e-mail to explain that Bank's counsel had "made an error when [he] indicated that [Bank] was prepared to accept the late payment [and] got this mixed up with another matter." Appellees' counsel replied that Appellees had "obviously relied on the representation that the late payment would be accepted as payment in full." That same day, Appellees filed a petition to enforce the parties' Settlement Agreement. On February 4, 2016, Bank's counsel sent Appellees' counsel a check made payable to Appellees for $16,500.00 and a letter stating: "I am returning the $16,500 check made payable to your client. It was not timely paid. As I noted earlier, my email was in error." To date, Appellees have not cashed the check.

In granting Appellees' petition to enforce the Settlement Agreement, the court reasoned:

> The gist of Bank's argument is that its counsel was without authority to accept the $16,[5]00 paid after the due date in the written agreement. It emphasizes the traditional rule that [a]ttorneys, without specific authority cannot bind their client to a settlement agreement. [Appellees counter] that the settlement agreement had already been reached, and this was simply an implementation of the agreement and that grace offered by counsel for Bank was well within his authority. …
>
> I found [Appellees'] argument persuasive and entered the order that is now on appeal.

(Trial Court Opinion, dated October 17, 2016, at 3-4). The record supports the court's decision. **See Salsman, supra**; **Step Plan Services, Inc.,**

*supra*.

Here, Bank and Appellees entered into a Settlement Agreement on September 2, 2015. The terms of the Settlement Agreement required Appellees to pay a total of $22,000.00 as full satisfaction for their debt in two installments: $5,500.00 by September 10, 2015, and $16,500.00 by December 2, 2015. The Settlement Agreement further established that Appellees consented to entry of judgment against them for the full Judgment Amount ($74,197.65) if they failed to make either installment payment in a timely manner. Appellees paid the initial installment on time, but they did not make the second payment by December 2, 2015.

In furtherance of the Settlement Agreement, Bank's counsel contacted Appellees' counsel on Monday, January 25, 2016. Prior to this contact, Bank had not enforced its right to enter judgment against Appellees for the full amount owed per the Settlement Agreement. During the course of the e-mails exchanged between the parties' counsel from January 25 to January 29, Bank's counsel confirmed that Bank had expressly authorized him to keep the Settlement Agreement in effect and accept payment of the second installment by week's end. Relying on the representations of Bank's counsel, Appellees wire-transferred the second and final installment payment to Bank's counsel's IOLTA account on Friday, January 29, 2016.

Significantly, this case does **not** involve a situation where Bank's counsel **entered into** the Settlement Agreement without Bank's express

authority. ***Compare Reutzel, supra***; ***Rothman, supra***. Rather, the parties in this case had already expressly settled their dispute for a sum certain to "avoid the uncertainties of litigation." None of the authority Bank cites applies to scenarios where counsel, by courtesy, extends a grace period to a *bona fide* settlement agreement.[2] Importantly, Appellees acted promptly after Bank's counsel contacted them about the remaining balance. By January 29, 2016, Appellees had wired Bank's counsel the amount due, which constituted full performance. Given these circumstances, particularly in light of Bank's counsel's representation of express authority to accept the second payment in full satisfaction of the debt, principles of equity and agency support the trial court's decision to enforce the parties' Settlement Agreement.[3] ***See Reutzel, supra***; ***Starling, supra***. Accordingly, we affirm.

Order affirmed.

Judge Solano did not participate in the consideration or decision of this case.

---

[2] Many of the cases Bank cites are non-binding federal authority. ***See Eckman v. Erie Ins. Exchange***, 21 A.3d 1203 (Pa.Super. 2011) (stating we are not bound by federal court decisions, except U.S. Supreme Court).

[3] Paragraph 7 of the Settlement Agreement also expressly gave counsel for both parties the right to modify the agreement in writing, which theoretically allowed counsel to agree to a grace period. (***See*** Settlement Agreement at ¶ 7; R.R. at 12) (stating: "No changes, alterations, or amendments are valid except upon written agreement of [Bank] and [Appellees], **their attorneys**, heirs, executors, successors, **or** assigns") (emphasis added).

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  1/30/2018