**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2223
_____

In Re:  TERESA VELARDI,
                                  Debtor

TERESA VELARDI,
                                  Appellant

v.

COUNTRYWIDE BANK, FSB; RUSHMORE LOAN MANAGEMENT
SERVICES, LLC; BANK OF AMERICA, N.A.; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC; PHELAN HALLINAN DIAMOND & JONES,
LLP; WILMINGTON SAVINGS FUND SOCIETY, FSB, d/b/a CHRISTIANA TRUST
AS TRUSTEE FOR PRETIUM MORTGAGE ACQUISITION TRUST
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-16-cv-01120)
District Judge:  Honorable Malachy E. Mannion
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 6, 2017
Before:  JORDAN, RESTREPO, and SCIRICA, Circuit Judges

(Opinion filed: February 1, 2018)

_____

OPINION[*]

_____

PER CURIAM

Teresa Velardi appeals from the order of the District Court affirming the Bankruptcy Court's dismissal of her adversary complaint. We will affirm as well.

I.

This matter arises from a $176,750 loan that Velardi received from or through Countrywide Bank, FSB. The loan is evidenced by a note and is secured by a mortgage on Velardi's residence in Clarks Summit, Pennsylvania. The transaction closed when Velardi executed the note and mortgage on January 8, 2008. Countrywide's nominee later assigned the mortgage to Bank of America, N.A. ("BOFA").

Velardi paid approximately $45,000 under the note over almost three years before defaulting. BOFA then filed a mortgage foreclosure action against her in Pennsylvania state court. The trial court entered summary judgment in BOFA's favor, and the Pennsylvania Superior Court affirmed. See Bank of Am., N.A. v. Velardi, No. 989 MDA 2014, 2015 WL 7280964 (Pa. Super. Ct. May 20, 2015).

Shortly thereafter, Velardi filed a Chapter 7 bankruptcy proceeding and later filed the adversary complaint at issue here. She named Countrywide, BOFA, and several other

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

defendants, and she asserted five claims under the Truth in Lending Act ("TILA").

Those claims are based on two principal allegations.

First, although both the note and the mortgage identify Countrywide as the lender, Velardi alleged that Countrywide was not the true lender because a different entity (which she does not identify) actually funded the loan. Velardi further alleged that Countrywide's failure to disclose the true lender's identity violated the disclosure requirements of 15 U.S.C. § 1638(a). Second, Velardi alleged that Countrywide's failure to disclose the true lender gave her the right to rescind the transaction under 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23 and that she exercised that right by sending defendants a notice of rescission on May 15, 2015.

On the basis of these allegations, Velardi requested numerous forms of relief. As relevant here, she requested an injunction against further state court proceedings (which her bankruptcy filing stayed), cancellation of the note, return of all payments she made thereunder, satisfaction of the mortgage, and damages.

Defendants filed motions to dismiss under Fed. R. Civ. P. 12(b)(6), as made applicable by Fed. R. Bankr. 7012(b). They argued, among other things, that Velardi's claims were barred by the Rooker-Feldman doctrine[1] and that her attempted rescission was untimely under the three-year limitations period contained in 15 U.S.C. § 1635(f). The Bankruptcy Court granted defendants' motions and dismissed all of Velardi's claims

---

[1] See D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413 (1923).

by separate orders entered February 24, 2016, and June 3, 2016. The Bankruptcy Court dismissed Velardi's claims on the sole ground that they were untimely. Velardi appealed to the District Court, and the District Court affirmed. Velardi now appeals to us.

II.

A.    Jurisdiction and Standard of Review

The Bankruptcy Court declined to consider defendants' arguments under the Rooker-Feldman doctrine because it deemed Velardi's claims untimely. Both that court and the District Court should have considered Rooker-Feldman as a threshold matter because, when it applies, it strips federal courts of subject matter jurisdiction. See Williams v. BASF Catalysts LLC, 765 F.3d 306, 315 (3d Cir. 2014). We conclude, however, that the doctrine does not apply here.

The Rooker-Feldman doctrine is a narrow one confined to cases in which, inter alia, a plaintiff complains of injuries caused by a state-court judgment. See id. In this case, Velardi's alleged injury is Countrywide's alleged failure to disclose the true lender in 2008, long before the state-court foreclosure action began. "Rooker-Feldman does not bar suits that challenge actions or injuries . . . that predate entry of a state court decision." Allen v. DeBello, 861 F.3d 433, 438 (3d Cir. 2017). Velardi's request to enjoin further state-court action potentially implicates the Anti-Injunction Act and abstention under Younger v. Harris, 401 U.S. 37 (1971), but the lower courts need not have considered those issues, and we need not do so, because neither is jurisdictional. See Hamilton v.

4

Bromley, 862 F.3d 329, 334 (3d Cir. 2017) (Younger); Williams, 765 F.3d at 325 (Anti-Injunction Act).

Thus, the Bankruptcy Court had jurisdiction over this core proceeding under 28 U.S.C. § 157(b), the District Court had jurisdiction under 28 U.S.C. § 158(a)(1), and we have jurisdiction under 28 U.S.C. §§ 158(d)(1) and 1291. Like the District Court, we review de novo the Bankruptcy Court's dismissal of Velardi's complaint. See Brandt v. B.A. Capital Co. LP (In re Plassein Int'l Corp.), 590 F.3d 252, 256 (3d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Williams, 765 F.3d at 315 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). We review dismissals without leave to amend for abuse of discretion. See Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 163 (3d Cir. 2010).

## B. Timeliness of Velardi's Claims

Velardi raises numerous arguments on appeal, but they turn largely on a single issue. TILA's three-year period for rescinding a transaction under 15 U.S.C. § 1635(f) runs from the date that the parties "consummated" that transaction—i.e., the date on which the parties formed a contract. See Smith v. Fid. Consumer Disc. Co., 898 F.2d 896, 902-03 (3d Cir. 1990). That issue is governed by state law. See Jackson v. Grant, 890 F.2d 118, 120 (9th Cir. 1989).

Velardi argues that her claims are not untimely because she and Countrywide never consummated their transaction and the three-year period thus never began to run.

5

According to Velardi, the transaction was never consummated because Countrywide neither supplied the funds itself nor disclosed the entity that did.

We are not persuaded. As an initial matter, if Velardi and Countrywide never consummated their transaction, then there would be nothing to rescind. But leaving that point aside, it is clear that the parties consummated their transaction for TILA purposes. Under Pennsylvania law, a loan transaction is consummated at settlement when the borrower executes the documents and receives the funds. See Baribault v. Peoples Bank of Oxford, 714 A.2d 1040, 1042-43 (Pa. Super. Ct. 1998); First Mortg. Co. of Pa. v. Carter, 452 A.2d 835, 837-38 (Pa. Super. Ct. 1982). Velardi's complaint and the documents she attached reveal that she executed the note and mortgage on January 8, 2008. There is no dispute that the transaction closed or that she received the funds at that time.[2]

Instead, Velardi alleges only that the funds did not really come from Countrywide and that the parties' agreement was not supported by consideration for that reason. Even accepting as true Velardi's conclusory assertion that Countrywide did not really provide

_____

[2] Velardi alleges that Countrywide itself did not provide the funds for the $176,750 loan, but she does not allege that she never received it. Velardi nevertheless faults the lower courts for assuming that she received it without some affirmative allegation to that effect in the complaint. Velardi's note, however, states that she promises to pay $176,750 "[i]n return for a loan that I have received." (A.30; M.D. Pa. Bankr. No. 5-15-ap-00126, ECF No. 1 at 30.) And Velardi alleges that the loan was secured by a mortgage on her residence and that she remained there while making $45,000 in payments toward the loan over a period of almost three years (and apparently remains there still). Given the nature of this transaction, the only plausible inference to be drawn from Velardi's complaint on this point is that she received the loan.

the funds, however, Velardi received through some action of Countrywide the very loan for which she and Countrywide bargained. That transaction reflects consideration. See Stelmack v. Glen Alden Coal Co., 14 A.2d 127, 128 (Pa. 1940) (addressing general principles of consideration).

In sum, the transaction between Velardi and Countrywide was consummated on January 8, 2008. Under TILA, Velardi had three years after that to serve defendants with a notice of rescission. See 15 U.S.C. § 1635(f); Jesinoski v. Countrywide Home Loans, Inc., 135 S. Ct. 790, 792-93 (2015). That three-year period is a statute of repose that extinguishes not only the ability to seek rescission but the right of rescission itself, and it is not subject to tolling. See Beach v. Ocwen Fed. Bank, 523 U.S. 410, 417 (1998); Drennen v. PNC Bank Nat'l Ass'n (In re Cmty. Bank of N. Va.), 622 F.3d 275, 301 n.18 (3d Cir. 2010). Velardi did not serve her notice of rescission until over seven years later in 2015. Thus, her purported rescission was long untimely.

We reject Velardi's remaining arguments for the reasons that the District Court explained, but we will briefly address two of them. First, Velardi argues that defendants waived the defense of untimeliness because they did not respond to her notice of rescission within 20 days as required by 15 U.S.C. § 1635(b). That statute requires creditors to take certain steps when "an obligor exercises his right to rescind under [15 U.S.C. § 1635(a)]." 15 U.S.C. § 1635(b). As explained above, however, Velardi lost the right to rescind three years after she and Countrywide consummated their transaction. Thus, her purported notice was not the exercise of a "right to rescind" under § 1635(a)

7

and did not trigger any obligation to respond. Even if it did, Velardi cites no authority for the proposition that failure to respond to a notice of rescission constitutes a waiver of affirmative defenses in subsequent court proceedings. We are aware of none.

Second, Velardi argues that the Bankruptcy Court abused its discretion in dismissing her complaint without leave to amend. The Bankruptcy Court concluded that amendment would be futile, and we agree. See Great W. Mining & Mineral Co., 615 F.3d at 175. Indeed, even on appeal Velardi has not specified any way in which she could amend her complaint if given the chance.

III.

For these reasons, we will affirm the judgment of the District Court. The motion of appellees Rushmore Loan Management Services, LLC, and Wilmington Savings Fund Society, FSB, for leave to file a brief out of time is denied. We note that, as these appellees acknowledge, they do not seek to raise any issue or argument not already raised by the appellees who timely filed their brief.